TWINSBURG CITY SCHOOL DISTRICT BOARD OF EDUCATION, Appellant,

v.

STATE EMPLOYMENT RELATIONS BOARD et al., Appellees.

[Cite as *Twinsburg City School Dist. Bd. of Edn. v. State Emp. Relations Bd.,* 172 Ohio App.3d 535, 2007-Ohio-957.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 23366.

Decided March 7, 2007.

Ronald J. Habowski, for appellant.

Cornelius J. Baasten, for appellee Twinsburg Support Staff, OEA/NEA.

Michael J. Zidar, for appellee State Employment Relations Board.

---

WHITMORE, Presiding Judge.

{¶ 1} Plaintiff-appellant, Twinsburg City School District Board of Education ("Twinsburg"), has appealed from the judgment of the Summit County Court of

Common Pleas, which affirmed the judgment issued by defendant-appellee State Employment Relations Board ("SERB"). This court affirms.

## I

{¶ 2} Twinsburg began negotiating a successor collective-bargaining agreement ("CBA") with defendant-appellee Twinsburg Support Staff, OEA/NEA ("the Union") in November 2002. The parties engaged in approximately six sessions before they determined that a mediator was necessary. The parties then engaged in approximately five sessions with a mutually agreed-upon mediator. During these sessions, the parties came to very few agreements, and those items that were agreed upon were minor. At the heart of their differences were two items: salary increases and health-insurance coverage.

{¶ 3} On April 7, 2003, Twinsburg presented what it termed its last, best offer based upon Twinsburg's belief that the parties were at an impasse. For the sake of clarity, this court will use the parties' terminology and refer to Twinsburg's final proposal as its "last, best offer" despite our finding below that the parties were not at an impasse. On May 29, 2003, the parties met again and the Union submitted another proposal. Twinsburg responded that it could not meet that offer and that it would go forward with the unilateral implementation of its last, best offer. At that point, the Union's representative, Karen Gee, met in a side-bar with Twinsburg's representative. Gee indicated that the Union was willing to move with respect to all of the open issues and requested that Twinsburg not move forward with unilateral implementation. However, on June 1, 2003, Twins-burg unilaterally implemented its last, best offer.

{¶ 4} Following that implementation, the Union filed an unfair-labor-practice ("ULP") charge against Twinsburg. During the initial investigation, investigators for SERB twice recommended that the charge be dismissed for lack of probable cause. These recommendations were rejected by SERB, and the matter ultimately went forward for a full hearing. At the conclusion of the hearing, SERB found that Twinsburg had committed a ULP. Twinsburg appealed SERB's decision to the trial court. On July 26, 2006, the trial court affirmed SERB's finding that Twinsburg had violated R.C. 4117.11(A)(1) and 4117.11(A)(5) and thus committed a ULP. Twinsburg has timely appealed the trial court's judgment, raising four assignments of error for review. For ease of analysis, we have consolidated Twinsburg's third and fourth assignments of error.

## II

### Assignment of Error Number One

The trial court abused its discretion by affirming the State Employment Relations Board's order that required the board to continue labor negotiations beyond the board's financial ability and in violation of O.R.C. 5705.412.

■ {¶ 5} In its first assignment of error, Twinsburg has asserted that the trial court erred in affirming SERB's decision. Specifically, Twinsburg has argued that SERB's decision is in conflict with R.C. 5705.412. This court disagrees.

{¶ 6} Twinsburg is correct in its assertion that R.C. 5705.412(B) prohibits school districts from engaging in deficit spending. Twinsburg's contention, however, that the order issued by SERB requires it to engage in deficit spending lacks merit.

{¶ 7} In its decision, SERB determined that Twinsburg had committed a ULP by failing to negotiate in good faith. In reaching this decision, SERB determined that the Union was still willing to negotiate on nearly every topic covered by the parties' CBA. In support of its conclusion, SERB found that Twinsburg's inability to certify that funds were available for only one of the Union's proposals was insufficient to support a finding that the parties were at an impasse in negotiations. That decision in no manner requires that Twinsburg engage in deficit spending. Rather, it concludes that Twinsburg did not negotiate in good faith. As such, SERB's decision is not in conflict with R.C. 5705.412. Twinsburg's first assignment of error lacks merit.

### Assignment of Error Number Two

The trial court abused its discretion by affirming a SERB order that was internally inconsistent with SERB's prior findings.

{¶ 8} In its second assignment of error, Twinsburg has argued that the trial court was required to reverse SERB's decision because that decision was internally inconsistent. We disagree.

{¶ 9} In support of its claim of internal inconsistencies, Twinsburg relies upon *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 613 N.E.2d 591. In that case, the Ohio Supreme Court held as follows:

[A]n agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable.

Id. at 471, 613 N.E.2d 591. In support of its holding, the court relied upon *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265, in which the court noted that "where a *witness'* testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight." (Emphasis added.) Id. at 111, 17 O.O.3d 65, 407 N.E.2d 1265.

{¶ 10} Twinsburg, however, has not relied upon any *internal* inconsistency in the SERB proceedings. Rather, Twinsburg has asserted that SERB's decision is inconsistent with other SERB decisions entered near the time of the instant matter. Twinsburg has offered no support for its position that a prior SERB decision may serve as the basis for a finding that the current SERB decision is somehow invalid. Moreover, the *Historical Soc.* discussion relates to the trial court's ability to deviate from findings of fact. As the decisions relied upon by Twinsburg arise out of different districts and rely upon different evidence, they cannot serve to undermine the factual findings made by SERB in the instant proceeding. Thus, we decline to expand the Ohio Supreme Court's decisions regarding factual findings and internal inconsistencies to include any arguably inconsistent results contained in unrelated external matters. Moreover, to the extent that Twinsburg has asserted that SERB deviated from the proper legal framework, this court has found no error in the proceedings as detailed in response to Twinsburg's remaining assignments of error.

{¶ 11} Twinsburg's second assignment of error lacks merit.

### Assignment of Error Number Three

The trial court abused its discretion by affirming a SERB order that rested on improper inferences.

### Assignment of Error Number Four

The trial court abused its discretion by affirming a SERB order that is not supportable by the undisputed facts.

{¶ 12} In its third and fourth assignments of error, Twinsburg has asserted that the trial court erred in affirming SERB's decision. Specifically, Twinsburg has asserted that both SERB and the trial court relied upon improper inferences to reach their decisions. This court disagrees.

{¶ 13} The Ohio Supreme Court has opined on this court's standard of review as follows:

In *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 259–261 [533 N.E.2d 264], this court explained that different standards of review are to be applied by a common pleas court and by a court of appeals when reviewing an order of SERB in a ULP case. When a common pleas court reviews a SERB order, the court must determine whether the order is supported by substantial evidence in the record. This standard of review for a common pleas court is supplied by R.C. 4117.13(D), which provides that "[t]he findings of the board [SERB] as to the facts, if supported by substantial evidence, on the record as a whole, are conclusive." See *Lorain City Bd. of Edn., supra,* at 259, 533 N.E.2d at 266.

An appellate court, on the other hand, plays a more limited role than a trial court in reviewing the same SERB order. The role of the appellate court is to determine whether the trial court has abused its discretion. The appellate court must affirm the judgment of the trial court if no abuse of discretion occurred. Id., 40 Ohio St.3d at 260–261, 533 N.E.2d at 267.

*State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.* (1993), 66 Ohio St.3d 485, 491–492, 613 N.E.2d 605. An abuse of discretion implies more than an error in judgment; it connotes unreasonable, arbitrary, or unconscionable conduct on the trial court's part. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Under this standard, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 14} R.C. 4117.11(A) provides as follows:

It is an unfair labor practice for a public employer, its agents, or representatives to:

(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;

\* \* \*

(5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code.

At issue herein is whether Twinsburg violated the above provisions by unilaterally implementing its last, best offer prior to the parties reaching ultimate impasse. If the parties never reached ultimate impasse, then the unilateral implementation of Twinsburg's last, best offer was a ULP. See *Vandalia–Butler City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (Aug. 15, 1991), 2d Dist. No. 12517, 1991 WL 355161, at \*4.

{¶ 15} SERB has adopted the National Labor Relations Board's definition of "ultimate impasse" in its proceedings. See id. To be at ultimate impasse, there must be "no realistic possibility that continuation of discussion at that time would have been fruitful." *Am. Fedn. of Television & Radio Artists, AFL–CIO, Kansas City Local v. Natl. Labor Relations Bd.* (C.A.D.C.1968), 395 F.2d 622, 628.

{¶ 16} In support of its assertions, Twinsburg has relied upon several facts. First, Twinsburg has asserted that it could not agree to the last written offer proposed by the Union because of Ohio's prohibition on deficit spending. In addition, Twinsburg asserts that it bargained in good faith by attending roughly

ten negotiating sessions, offering a substantial wage increase, and offering decreases in health-care costs. Upon review of the evidence, however, we find no abuse of discretion by the trial court in its finding that SERB had before it substantial evidence that the parties were not at an impasse and that Twinsburg had not engaged in good-faith bargaining.

{¶ 17} The Union presented evidence that several of the "negotiating" sessions involved no negotiations. One session consisted entirely of Twinsburg presenting its proposal on health-care insurance. Another session consisted entirely of discussions with Twinsburg's transportation supervisor. During that session, the supervisor, Mr. Mariola, admitted that he was unfamiliar with the transportation proposals made by both parties. In addition, the Union presented evidence that the parties' first session was nothing more than an exchange of the parties' initial proposals and that no negotiations took place at that time.

{¶ 18} However, there is no question that a substantial amount of time was devoted to negotiations between the parties. The parties on several occasions went late into the evening in an attempt to resolve issues currently on the table. The Union has asserted, however, that Twinsburg engaged in nothing more than "surface bargaining." The parties have explained surface bargaining as simply going through the motions without any meaningful effort to reach an agreement. Courts have explained the term as follows:

> [I]f the Board is not to be blinded by empty talk and by the mere surface motions of collective bargaining, it must take some cognizance of the reasonableness of the positions taken by an employer in the course of bargaining negotiations. * * * Thus if an employer can find nothing whatever to agree to in an ordinary current-day contract submitted to him, or in some of the union's related minor requests, and if the employer makes not a single serious proposal meeting the union at least part way, then certainly the Board must be able to conclude that this is at least some evidence of bad faith, that is, of a desire not to reach an agreement with the union. In other words, while the Board cannot force an employer to make a "concession" on any specific issue or to adopt any particular position, the employer is obliged to make some reasonable effort in some direction to compose his differences with the union.

*Natl. Labor Relations Bd. v. Reed & Prince Mfg. Co.* (C.A.1, 1953), 205 F.2d 131, 134. Upon review of the record, we find no abuse of discretion in the trial court's determination that SERB had before it substantial evidence that Twinsburg had engaged in surface bargaining.

{¶ 19} Despite meeting for numerous hours on numerous occasions, the parties agree that they reached tentative agreements on primarily minor issues. In further support, the Union presented evidence that Twinsburg's counterproposals often agreed to portions of the proposals made by the Union, but then stripped

those proposals of any meaning by altering key features. Thus, we find no abuse of discretion in the trial court's finding that Twinsburg had engaged in surface bargaining.

{¶ 20} Twinsburg's lack of good faith during bargaining precludes it from asserting that the parties reached an ultimate impasse. See *Vandalia–Butler*, supra, at *4. However, assuming arguendo that Twinsburg had negotiated in good faith, its claim that the parties were at ultimate impasse is unsupported by the evidence.

{¶ 21} Twinsburg's superintendent and a member of its negotiating team, Jim Jones, described each of the parties' sessions as effective and productive. He indicated that the lack of tentative agreements was not indicative of the parties' willingness to negotiate. Despite these assertions, however, Twinsburg has asserted that no further negotiations would have been fruitful. This argument hinges upon one assertion: Twinsburg could not fund the last written proposal made by the Union. In effect, Twinsburg has asserted that its last, best offer was the maximum benefits it could offer the Union based upon the current financial situation of the district and that the Union's rejection of that proposal placed the parties at ultimate impasse.

{¶ 22} Initially, we assume for the sake of argument that Twinsburg could not fund the final written proposal from the Union and that its proposal consisted of the maximum costs the district could afford. Under that assumption, we find no abuse of discretion in the trial court's decision. This court cannot find error in the trial court's affirmance of SERB's finding that this one fact (financial restraints), standing alone, does not permit implementation of a last, best offer.

{¶ 23} Ms. Gee testified that during the parties' final negotiating session, she was informed that Twinsburg intended to implement its last, best offer. In response to this information, Ms. Gee made what she termed "huge" concessions on behalf of the Union. Ms. Gee informed Twinsburg that the Union would agree to the salary increases proposed by Twinsburg and that the Union was willing to negotiate on all of the remaining open issues. Within minutes of asserting this new position, Ms. Gee was informed that Twinsburg still intended to move forward with its last, best offer.[1]

{¶ 24} In an attempt to demonstrate that further negotiations would not have been fruitful, Twinsburg has effectively asserted that its final offer was "as good as it's going to get." This position, however, ignores the Union's willingness to continue negotiating on numerous issues. The parties agree that roughly nine

---

1. While this offer from Ms. Gee was not reduced to writing as required under the parties' contract to be a formal proposal, her testimony about the offer having been made was undisputed.

issues were still outstanding when Twinsburg instituted its last, best offer. The fact that Twinsburg had offered a package whose costs equaled the maximum Twinsburg was willing to offer does not alleviate its duty to negotiate in good faith. Twinsburg ignores the fact that the Union's willingness to reach concessions in the outstanding areas would create the opportunity to reallocate costs in a different manner.

{¶ 25} In support of its argument, Twinsburg posited the following example. The district cannot afford to pay a salary increase greater than $1.25. The Union proposes an initial increase of $1.75, and the district counters with $1.15. Twinsburg then asserts that the Union's willingness to move to $1.50, $1.40, or even $1.30 is fruitless because Twinsburg will not move above $1.25. This argument, however, suffers a fatal flaw. It attempts to place these numerical values in a vacuum and ignores every other provision in Twinsburg's proposal.

{¶ 26} There is no dispute that Twinsburg had budgetary constraints and that those restraints are relevant considerations during negotiations. Another hypothetical, however, illustrates the flaw in Twinsburg's argument. Under this hypothetical, assume that the district has $10 total which it can use, without engaging in deficit spending, for additions or improvements to the existing CBA. Then assume that the district asserts the same $1.25 cap on salaries based upon the total cost of its other proposed contractual provisions. Now assume that the district's health-care proposal costs $2 and its remaining issues allocate the remaining $6.75 of its $10 cap. The fact that the Union is willing to negotiate on every other outstanding issue provides a mechanism for fruitful negotiation. For example, if the Union will agree to a lesser health-care proposal costing $1.75, then Twinsburg may increase its salary offer to $1.50 while maintaining the same overall cost of its proposal. That is, as the remaining outstanding issues provided room to negotiate, a district cannot rely upon the assertion that the overall cost of its proposal could not be increased to assert that the parties were at ultimate impasse.

{¶ 27} The same conclusion can be drawn from the facts at hand. In short, Twinsburg's last, best offer allocated resources to all of the outstanding issues remaining between the parties. The Union then agreed that it was willing to negotiate on each and every one of those remaining issues and agreed to the salary increases in Twinsburg's proposal. Accordingly, there existed numerous opportunities for the reallocation of monies and thus fruitful negotiations. Whether the issue was monies allocated to bus washing, the use of an unlimited number of substitutes, or changes to the health-care plan, the Union's expressed willingness to negotiate on these issues offered the ability to reallocate the costs contained in both the Union's final proposal and Twinsburg's last, best offer. Thus, the parties had the ability to move forward with fruitful negotiations.

While the parties describe many of the outstanding issues as nonmonetary, there is no dispute that the health-care coverage was monetary and still unresolved. Furthermore, there is no evidence that the parties were at impasse with respect to the nonmonetary issues. Twinsburg, however, refused to negotiate despite the opportunity to do so. Twinsburg, therefore, committed a ULP by imposing its last, best offer before the parties reached ultimate impasse.

{¶ 28} In conclusion, we do not fail to appreciate that Twinsburg did engage in some good-faith negotiations. Following numerous, lengthy negotiating sessions, Twinsburg increased its prior offers and offered significant pay raises, and the parties reached several tentative agreements on minor issues. However, while Twinsburg's superintendent described the parties' sessions as productive and effective, Twinsburg then asserted that no further negotiations would be successful. This contradictory statement undermines Twinsburg's assertions that the parties were at ultimate impasse. In addition, we cannot say that Twinsburg's actions in negotiation were all taken in good faith. Twinsburg delayed the proceedings initially with permission of the Union to focus its efforts on a pending levy. Despite this delay, Twinsburg delayed the proceedings again by failing to timely submit a health-care proposal and by failing to inform its transportation supervisor of the parties' pending proposals. As a result, numerous sessions were attended at which no actual negotiations took place.

{¶ 29} Based upon the above evidence and this court's highly deferential standard of review, we cannot find that the trial court acted unreasonably or arbitrarily in finding that SERB had before it substantial evidence that Twinsburg did not negotiate in good faith and that Twinsburg implemented its last, best offer prior to the parties reaching ultimate impasse. Therefore, we cannot say that the trial court abused its discretion in upholding SERB's ruling that Twinsburg committed a ULP. Accordingly, Twinsburg's third and fourth assignments of error lack merit.

## III

{¶ 30} Twinsburg's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

MOORE and DICKINSON, JJ., concur.