[Cite as *State Emp. Relations Bd. v. Brook Park*, 2012-Ohio-5716.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 98524

## STATE EMPLOYMENT RELATIONS BOARD

PLAINTIFF-APPELLEE

vs.

## CITY OF BROOKPARK

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the

Cuyahoga County Court of Common Pleas
Case No. CV-766430


BEFORE:   Sweeney, P.J., S. Gallagher, J., and Rocco, J.

RELEASED AND JOURNALIZED:   December 6, 2012

ATTORNEYS FOR APPELLANT

Gary C. Johnson
William F. Schmitz
Eric Allain
Gary C. Johnson & Associates
635 W. Lakeside Avenue
Suite 600
Cleveland, Ohio 44113

ATTORNEYS FOR APPELLEE

Lori J. Weisman
Assistant Attorney General
Labor Relations Section
615 W. Superior Avenue, 11th Floor
Cleveland, Ohio 44113

Thomas M. Hanculak
Daniel A. Powell
Diemert & Associates Co., L.P.A.
1360 S.O.M. Center Road
Cleveland, Ohio 44124

JAMES J. SWEENEY, P.J.:

{¶1} The city of Brook Park ("City") appeals from the trial court's judgment that affirmed the State Employment Relations Board's ("SERB") order that found the City had violated R.C. 4117.11(A)(1) and (5) by

unilaterally implementing a collective bargaining agreement ("CBA") prior to exhausting the statutory dispute settlement procedures and reaching ultimate impasse. For the reasons that follow, we affirm.

{¶2} An appellate court's role in an appeal that challenges a SERB order is limited to determining whether the trial court abused its discretion in rendering its decision on the same order. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264 (1988). "The appellate court must affirm the judgment of the trial court if no abuse of discretion occurred." *Id.* Absent an abuse of discretion with regard to any particular factual finding, we must defer to the facts as established by the record.

{¶3} The record contains the following findings of fact, which include stipulations of the parties and the Administrative Law Judge's ("ALJ") findings that were adopted by SERB and affirmed by the trial court:

1. The City is a "public employer" as defined by §4117.01(B). At all times relevant, Mark J. Elliot was the City's Mayor, Neal Jamison was the City's Law Director. Mayor Elliot and Mr. Jamison acted as agents or representatives of the City.

2. [The Brook Park Fire Fighters' Association] Local 1141 is an "employee organization" as defined by §4117.01(D) and is the exclusive

representative for the bargaining unit of the City's fire fighters at the rank of Lieutenant or below.

3. The City and Local 1141 were parties to a collective bargaining agreement ("2008-09 CBA") effective from January 1, 2008 through December 31, 2009.

4. Article XXIII of the Agreement has a "Duration Clause" which provided, in relevant part, as follows:

> This Agreement * * * shall remain in full force and effect until December 31, 2009. If either party desires to make any change in the Agreement for a period subsequent to December 31, 2009, notice of such a desire shall be given pursuant to this Article. If no notice seeking modification is given, then the Agreement shall remain in effect for another year, although notice may be given in any subsequent year prior to November 1, and the procedure stipulated herein shall then take effect.

5. Since the inception of Ohio's Collective Bargaining Act, Local 1141 and the City have had the same "Duration Clause" in Article XXIII of their CBA. And, pursuant to that clause, the Union has always provided a Notice to Negotiate in writing.

6. On October 28, 2009, Gary Johnson, the bargaining agent for the City, telephoned James Astorino, the bargaining agent for Local 1141, and left the following message:

> Jim, Gary Johnson, [telephone number], calling you about two thriving metropolises: Parma and Brook Park. We served notice to negotiate on the guys in Parma a month ago and haven't heard

a thing, they want to get started negotiating. If you guys don't want to do anything, then I'm supposed to file for fact-finding and get a list. I prefer not to do that, but time is of the essence. Brook Park not quite of such time essence but the Mayor would like to get started because we would like to get this thing concluded. So, if you can give me a call about both of these I would appreciate it.

7. On or about October 30, 2009, Mr. Astorino left a voicemail for Mr. Johnson indicating that he was returning his call. Mr. Johnson phoned Mr. Astorino in early November to obtain negotiation dates, and Mr. Astorino said that he had to get his committee together, and would get back to him.

8. Other employee organizations representing City bargaining units filed written Notices to Negotiate in 2009. Local 1141 desired an extension of the previous agreement and did not file a Notice to Negotiate.

9. On December 4, 2009, Local 1141 sent a letter to the City stating that pursuant to Article XXIII of the 2008-09 CBA and O.R.C. §4117.14(B)(1), Local 1141 had decided not to file a Notice to Negotiate. Local 1141 explained that it was prepared to extend the 2008-09 CBA for another year per the terms of the contract.

10. On December 10, 2009, the City filed a Notice to Negotiate with SERB, which was assigned Case No. 2009-MED-12-1505 and served upon Local 1141 with a letter from Gary Johnson, outside counsel for the City.

The City's first written correspondence regarding negotiations for a successor CBA was the service upon Mr. Astorino of the City's Notice to Negotiate.

11.  In the Notice to Negotiate, the City acknowledged that the parties had not adopted a mutually agreed upon negotiations dispute settlement procedure ("MAD").

12.  After the filing of the Notice to Negotiate on December 10, 2010, the City and the Union did not engage in formal negotiations.

13.  In December 15, 2009, the Union filed a Policy Grievance at Step 3 of the contractual grievance procedure, claiming the Notice to Negotiate was wrongfully filed and was a misapplication of Article XXIII of the 2008-09 CBA.

14.  On December 21, 2009, SERB General Counsel J. Russell Keith sent letters to Mr. Astorino and Mr. Johnson, informing them of the assignment of the mediation case number.  In the letter, Mr. Keith wrote, "we understand that the parties do not have a mutually agreed dispute settlement procedure (MAD) to resolve any impasses in current negotiations and that the statutory dispute settlement procedure is to apply."

15.  On January 11, 2010, Local 1141 filed a Motion to Dismiss the City's Notice to Negotiate, alleging that the City's notice was not timely under §4117.14(B)(1)(a) which provides that "any public employer or exclusive

representative desiring to terminate, modify, or negotiate a successor collective bargaining agreement shall * * * [s]erve written notice upon the other party * * * not less than sixty days prior to the expiration date of the existing agreement[.]"

16. While Local 1141's Motion to Dismiss was pending, the parties engaged in preliminary discussions regarding proposals for a new contract. Two meetings were held in January 2010. In attendance were two representatives from the City, Mayor Elliot and the City's Human Resources Director, and two representatives from the Union. The Union considered the January meetings productive. Local 1141 suggested that it would withdraw its Motion to Dismiss the Notice to Negotiate if the City proposed respectable terms the Union Executive Officers could present to the Union body. Local 1141 also indicated its willingness to make certain concessions the City desired if the City was willing to agree to stop pursuing the elimination of the nine-man minimum manning requirement that had existed in the parties' contracts for quite some time.

17. On January 25, 2010, the City opposed the Motion to Dismiss, asserting that its notice was not untimely under Article XXIII of the 2008-09 CBA.

18. On February 2, 2010, SERB denied Local 1141's Motion to Dismiss. SERB reasoned that §4117.14(B) does not contain a "penalty" provision that explains what happens if a party fails to file its Notice to Negotiate at least sixty days before the expiration of the prior contract. In addition, SERB noted that Article XXIII does not contain a sixty-day requirement to initiate negotiations. Therefore, SERB decided that the City's Notice to Negotiate was not untimely under Article XXIII, and the City was not subject to any penalties under §4117.14(B).

19. After SERB denied Local 1141's Motion to Dismiss, one more meeting was held between the parties on February 5, 2010. At that meeting, the discussions became tense after the City withdrew certain proposals made at previous meetings. The February meeting ended with the parties standing, yelling at each other, and the Mayor ordering the Executive Officers from the Union to leave his office.

20. On February 15, 2010, Mayor Elliot sent a letter to Local 1141 stating that Local 1141 had refused to negotiate a successor collective bargaining agreement, that Local 1141 had waived its right to negogiate, and that, therefore, the City would unilaterally impose a collective bargaining agreement for the 2010 calendar year ("the 2010 CBA"). The City stated that the 2010 CBA contained the same provisions as the expired 2008-09 CBA

except for changes to insurance, the number of employees allowed off on vacations and holidays, overtime rates, and the elimination of letters of understanding.

21. On February 16, 2010, in a letter to the City, Local 1141 responded that it knew of no provision in Chapter 4117 allowing a municipality to unilaterally impose a collective bargaining agreement upon a bargaining unit. Local 1141 wrote that the City ignored the remedy provided in §4117.14(C)(2), which states that parties unable to reach agreement can notify SERB to intervene.

22. Also, on February 16, 2010, Local 1141 field a Notice of Appeal to the Franklin County Court of Common Pleas with SERB and filed a Notice of Administrative Appeal in the Franklin County Court of Common Pleas (Case No. CV002473) of SERB Directive Denying the Local's Motion to Dismiss in Case No. 09-MED-12-1505.

23. On March 19, 2010, against objections from Local 1141 and at the request of Mayor Elliot, the Brook Park City Council held a special meeting and adopted Ordinance No. 9639-1010 approving the City's proposed 2010 CBA. The contract amendments/deletions were implemented by the City after City Council approved the ordinance and have been in effect since that time.

24. The City, at all times relevant, never requested SERB to intervene.

25. The contract unilaterally adopted by the City for 2010 amended or deleted the following provisions of the 2008-09 CBA:

- Article X - Overtime

- Article XII - Vacation

- Article XIII - Holidays

- Article XV - Health Insurance

- Article XVI - Clothing Allowance

- Letter of Understanding - Physical Examination and Training

- Letter of Understanding - Nine Man Minimum

- Memorandum of Understanding - HRA Payroll Deduction

{¶4} Local 1141 filed an Unfair Labor Practices Charge (ULP) with SERB, alleging that the City had violated R.C. 4117.11(A)(1) by unilaterally imposing a successor CBA. After a hearing, the ALJ issued a Proposed Order recommending that SERB find the City had violated R.C. 4117.11(A)(1) and (5). The City filed exceptions. SERB adopted the ALJ's reasoning and remedy in its order issued September 30, 2010. The SERB order included cease and desist, as well as, affirmative action directives to the City.

{¶5} The City pursued an appeal from SERB's order in the Cuyahoga County Court of Common Pleas pursuant to R.C. 4117.13(D). The trial court found that substantial evidence in the record supported SERB's order and, therefore, affirmed it.

{¶6} The City commenced a timely appeal to this Court that advances the following two assignments of error:

First Assignment of Error:

THE LOWER COURT ABUSED ITS DISCRETION BY AFFIRMING AN ORDER FROM THE STATE EMPLOYMENT RELATIONS BOARD FINDING THAT BROOK PARK VIOLATED R.C. 4117.11(A)(1) AND (5) BY IMPOSING TERMS OF A COLLECTIVE BARGAINING AGREEMENT WITHOUT EXHAUSTING STATUTORY BARGAINING PROCEDURES.

Second Assignment of Error:

THE LOWER COURT ABUSED ITS DISCRETION BY AFFIRMING SERB'S USE OF INCORRECT LAW TO DEFINE "ULTIMATE IMPASSE" AND NOT FIND THAT THE UNION WAIVED ITS RIGHT TO NEGOTIATE BY NOT PARTICIPATING IN THE PROCESS AS THE LAW REQUIRES.

{¶7} The abuse of discretion standard applies to determine whether the trial court erred by affirming SERB's order. "The appellate court must affirm the judgment of the trial court if no abuse of discretion occurred." *Lorain City Bd.*, 40 Ohio St.3d 257, 260-261.

It is an unfair labor practice for a public employer, its agents, or representatives to:

(1) Interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Chapter 4117. of the Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;

* * *

(5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code[.]

R.C. 4117.11(A)(1) and (5).

{¶8} The trial court affirmed SERB's order that found that the City committed a ULP because it failed to maintain the terms of the 2008-09 CBA until ultimate impasse by failing to exhaust statutory dispute settlement procedures and that constituted bad faith bargaining in violation of R.C. 4117.11(A)(1) and (5).

{¶9} The City argues its unilateral imposition of the 2010 contract was rightful based on its opinion that Local 1141 had committed an ULP by allegedly refusing to negotiate. Local 1141 responds that the unilateral imposition of the 2010 contract was a form of unauthorized self-help and invaded the exclusive jurisdiction of SERB. Local 1141 maintains that the City failed to avail itself of lawful options, including the pursuit of a ULP against Local 1141 or seeking SERB's intervention. The City explains that it

did not pursue SERB's intervention because the City was struggling economically and it would take   too long to pursue that option.

{¶10} It is clear that "[e]xclusive jurisdiction to resolve unfair labor practice charges is vested in SERB." *State ex rel. Ohio Dept. of Mental Health v. Nadel*, 98 Ohio St.3d 405, 2003-Ohio-1632, 786 N.E.2d 49, ¶ 23; *E. Cleveland v. E. Cleveland Fire Fighters Local 500, I.A.F.F.*, 70 Ohio St.3d 125, 127-128, 637 N.E.2d 878 (1994).   Self-help remedies in response to alleged unfair labor practices invade SERB's exclusive jurisdiction and undermine the statutory mechanisms that have been enacted to address unfair labor practices.   *In re City of N. Royalton*, SERB 99-002 (1-22-99).

{¶11}   At the time the City imposed the 2010 contract, the parties were in the period called "*status quo ante*," which is the time period between the expiration of the official contract and the exhaustion of the dispute settlement procedures. *In re Circleville*, SERB 2005-007 (8-25-05).   During *status quo ante* the prior contractual provisions carryover until the parties reach ultimate impasse.   "If the parties never reached ultimate impasse, then the unilateral implementation of [employer's] last, best offer was a ULP."   *Twinsburg City Sch. Dist. Bd. v. State Emp. Relations Bd.*, 172 Ohio App.3d 535, 2007-Ohio-957, 876 N.E.2d 580, ¶ 14 (9th Dist.).

{¶12} SERB found that the parties had not reached ultimate impasse pursuant to Ohio Adm.Code 4117-9-02(E), which provides:

> (E) Except as the parties may modify the negotiation process by mutually agreed-upon dispute settlement procedures, the parties shall continue in full force and effect all the terms and conditions of any existing collective bargaining agreement, without resort to strike or lockout, for a period of sixty days after the party gives notice, until the expiration date of the collective bargaining agreement, or the statutory dispute settlement procedures are exhausted, whichever occurs later.

*See also*, *SERB v. Circleville,* SERB 2002-ULP-05-0341.

{¶13} The City asserts that it was an abuse of discretion for the trial court to accept SERB's definition of ultimate impasse. The City argues that ultimate impasse occurs when there is no realistic possibility of a continuation of discussion at that time that would have been fruitful. In support, the City relies upon an excerpt from *Twinsburg*, which noted that SERB had "adopted the NLRB's definition of ultimate impasse in its proceedings." *Twinsburg*, 2007-Ohio-957, ¶ 15. Contrary to the City's position, this definition must be read in conjunction with, and not completely ignore, the statutory scheme applicable to public employees' collective bargaining, which includes Ohio Adm.Code 4117-9-02(E).

{¶14} It is undisputed that the parties did not have a mutually agreed-upon dispute settlement procedure ("MAD procedure"). Therefore, the statutory dispute settlement procedures applied.

{¶15} The City did commence statutory dispute settlement procedures with its Notice to Negotiate. R.C. 4117.14(B)(1). However, the City maintains that the law does not permit it to move the process to conciliation pursuant to R.C. 4117.14(D)(1). This interpretation of the statutory provisions is unreasonable. The provisions of subsection (D)(1) and (D)(2) simply set forth the varying procedures that govern strike-prohibited employees and non-strike prohibited employees. They do not prohibit employers of strike-prohibited employees from implementing the specified procedures. The City offers us no precedent that would support this interpretation and we have found none.

{¶16} Because the parties did not have a MAD procedure, they were required to exhaust statutory settlement procedures before reaching "ultimate impasse." The City did not do so. The City made no attempt to move to conciliation in this case despite notice from SERB that the statutory dispute settlement procedures applied. SERB did not misinterpret the law and the trial court did not abuse its discretion in this regard.

{¶17} The City further contends that Local 1141 waived its right to bargain. A union will not be held to have foregone a statutory right absent a "clear and unmistakable" waiver. *E.g.*, *Lakewood v. State Emp. Relations Bd.*, 66 Ohio App.3d 387, 584 N.E.2d 70 (8th Dist. 1990). In this case, Local 1141 filed a motion to dismiss the City's Notice to Negotiate with a reasonable belief that it was untimely pursuant to Article XXIII of the 2008-09 CBA, and therefore, Local 1141 believed that the terms of the existing contract would rollover. The record reflects that some preliminary negotiations took place while Local 1141's motion to dismiss was pending with SERB. However, once the motion was denied, the negotiations soured and ultimately the Union members were ordered to leave the City's office. Although Local 1141 perfected an appeal of the order denying its motion to dismiss to Franklin County Court of Common Pleas, it has yet to be decided. The record does not contain a clear and unmistakable waiver by Local 1141 of its right to bargain.

{¶18} The trial court did not abuse its discretion by affirming SERB's order. The assignments of error are overruled.

{¶19} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____

JAMES J. SWEENEY, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KENNETH A. ROCCO, J., CONCUR