[Cite as *Cleveland v. State Emp. Relations Bd.*, 2025-Ohio-4464.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

CITY OF CLEVELAND, :

    Plaintiff-Appellant, :

                                  No. 114616

    v. :

STATE EMPLOYMENT RELATIONS :
BOARD, ET AL.,

                            :

    Defendants-Appellees.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 25, 2025

---

Administrative Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-988388

---

### *Appearances:*

Zashin & Rich Co., LPA, and David P. Frantz, *for appellant*.

Dave Yost, Ohio Attorney General, and Lori J. Friedman, Principal Assistant Attorney General, Executive Agencies Section, Labor Relations Unit, *for appellee* State Employment Relations Board.

Lemmerbrock and Boron, LLC, Brooks W. Boron, and Thomas M. Steffas, *for appellee* Cleveland Police Patrolmen's Association.

LISA B. FORBES, J.:

{¶ 1} The City of Cleveland ("the City") appeals the trial court's decision upholding the State Employment Relations Board's ("SERB") order and opinion finding that the City committed an unfair labor practice in violation of R.C. 4117.11(A)(5) when it refused to bargain with the Cleveland Police Patrolmen's Association ("the CPPA") regarding the effects of a wearable-camera system ("the WCS") policy modification implemented in 2022. Because we find that the trial court did not abuse its discretion in affirming SERB's order and opinion, we affirm the judgment.

## I. Background and Procedural History

### A. The Use of the WCS in the City of Cleveland

#### 1. The Introduction and Initial Operation of the WCS

{¶ 2} In 2013, the City introduced the use of the WCS through a "pilot" program designed to test the feasibility of widespread implementation throughout the police force. In 2015, following the successful completion of the pilot program, the City mandated the use of the WCS within the Cleveland Division of Police. The WCS policy was updated in 2020.

{¶ 3} The City required officers to turn on the WCS at the start of their tour of duty and to keep it on for the entirety of their tour of duty. Officers are required to switch the WCS into "event" mode when, among other things, responding to a call for service, making a traffic stop, conducting a search or interview, and engaging in any scenario where the media could be of use to the public.

{¶ 4} While in event mode, the WCS continuously records both audio and video. The WCS also has a "buffering" mode that, prior to 2022, recorded 30-seconds of video only (without sound) immediately before event mode was started. Until 2022, when compiling the event-mode footage, the WCS would include the buffering-mode video loop of the 30 seconds before the officer switched the WCS into event mode.

{¶ 5} When officers return from their tour of duty, they are required to categorize and upload all WCS media to the City's cloud-based storage system. Officers are unable to make any alterations to or deletions from the footage either before or after it is uploaded. The footage, which can be identified by the date, location, and the associated officer, is subject to regular and random review. The footage can be accessed by other officers, an officer's direct supervisor and those up the chain of command, the Office of Professional Standards (an independent investigative agency of the Department of Public Safety), the media, and members of the public. The footage may be offered in courtroom proceedings.

{¶ 6} The City can use the WCS footage for disciplinary action up to and including termination. Failure to comply with the WCS policy, including failing to immediately switch the WCS into event mode when required, is a violation of the disciplinary regulations. Under the disciplinary regulations, officers can receive multiday suspensions without pay for committing violations such as using "abusive/demanding" language or engaging in "unbecoming" conduct.

### 2. The City Changed the WCS Policy in 2022

{¶ 7} On August 24, 2022, the City changed the WCS policy, issuing Divisional Notice ("DN") 22-269, which modified the length of the WCS buffering loop from 30 seconds to one minute and updated the buffering mode to record both audio and video. The CPPA requested that the City rescind DN-22-269 until there was an opportunity to bargain its decision and effects. In response, on September 7, 2022, the City issued DN-22-299, which reverted to a 30-second recording loop while in buffering mode, but maintained the change in buffering mode to capture both video and audio.

### B. Procedural History

{¶ 8} The CPPA filed an unfair labor practice complaint with SERB on September 2, 2022, alleging the City violated R.C. 4117.11(A)(1) and 4117.11(A)(5) by failing to bargain the decision to introduce audio recording to the WCS buffering mode and by failing to bargain the effects of that decision. On March 9, 2023, SERB concluded that there was probable cause to believe that the City violated R.C. 4117.11(A)(5) by "refusing to bargain over the [City's] decision to amend its body camera policy to include the recording of audio while body cameras are in buffering mode." *In re Cleveland*, SERB 2023-003 (9/8/2023), at p.6. On May 23, 2023, SERB issued a complaint and notice for hearing in which it alleged that the City "violated Section 4117.11(A)(5) of the Ohio Revised Code by refusing to bargain with the exclusive representative over the decision and effects of implementing changes to the WCS policy." A hearing was held on June 22, 2023.

{¶ 9} On September 8, 2023, an administrative-law judge ("ALJ") issued a proposed order recommending that SERB find the City in violation of R.C. 4117.11(A)(5) for failing to bargain the effects of the decision to include audio recording in the buffering mode of the WCS. The ALJ found that the CPPA had not met its burden of proof "regarding its allegation that the City violated R.C. 4117.11(A)(5) by refusing to bargain its unilateral decision to expand the media captured by its WCS to include 'buffering mode' audio." *In re Cleveland*, SERB 2023-003 (9/8/2023), at p.6. However, the ALJ found that the CPPA had met its burden regarding its claim that the City violated R.C. 4117.11(A)(5) by failing to bargain the effects of the WCS policy change.

{¶ 10} On October 26, 2023, SERB issued its "Order and Opinion," in which it adopted the entirety of the ALJ's proposed order, requiring the City to cease and desist from refusing to bargain and from recording the WCS buffering mode audio until good-faith bargaining was completed.

{¶ 11} The City appealed SERB's order and opinion to the Cuyahoga County Court of Common Pleas on November 10, 2023. On October 31, 2024, the trial court issued a journal entry determining that the "Order and Opinion issued by SERB on 10/26/2023 is supported by substantial evidence." The trial court found that the record established that "officers could be subject to discipline for misconduct captured by the [WCS]." The court entered a "decree enforcing the 10/26/2023 order finding that [the City] committed an unfair labor practice by refusing to

bargain over the effects of wearable camera system modification in violation of R.C. 4117.11(A)(5)."

{¶ 12} The City appeals from the trial court's decision, raising the following assignment of error:

> The Trial Court erred in affirming [SERB's] holding and by failing to find that the [CPPA] waived, through the language of its collective bargaining agreement with the [City], any right to bargain the effects of the City's exercise of its management rights in adjusting the recording functionality of the [WCS] utilized it the City's Division of Police.

## II. Law and Analysis

{¶ 13} In support of its sole assignment of error, the City argues that the trial court should have found that the CPPA waived the right to bargain the effects of a WCS policy change when it agreed to certain language in the collective-bargaining agreement between the City and the CPPA, effective from April 1, 2022, until March 31, 2025 ("the CBA"). The City argues that the CPPA "clearly and unmistakably waives any bargaining obligation" with respect to the City's exercise of its reserved rights as set forth in the "Management Rights clause" ("Management Rights Clause") found in Article 3 of the CBA.[1] This clause states:

> Notwithstanding ¶ 4117.08 of the Ohio Revised Code, the Employer is not required to bargain on any subjects — including, but not limited to, those enumerated above — reserved to and retained by the City under this Article. Therefore, the CPPA agrees that, during the life of this Agreement, the City shall have no obligation to bargain collectively with respect to the exercise of any rights reserved to and retained by it

---

[1] At the SERB hearing and before the trial court, the City argued that it had no obligation to bargain the changes to the WCS and effects those changes had on terms and conditions of employment because the City was simply exercising its management rights. We note that on appeal to this court, the City's argument is focused on waiver.

pursuant to either 4117.08(C) of the Revised Code or pursuant to this Article of this Agreement.

{¶ 14} Appellees, the CPPA and SERB, counter that the effects of the change in the WCS policy were not specifically or clearly waived in the CBA and that R.C. 4117.08 requires the City to bargain the effects of the policy change.

**A. Standard of Review**

{¶ 15} When the court of common pleas resolves an appeal of a determination by SERB, the "findings of the board as to the facts, if supported by substantial evidence, on the record as a whole, are conclusive." R.C. 4117.13(B). On appeal to this court from a trial court's determination, the appellate court's role is "limited to a determination of whether the trial court abused its discretion in the performance of its review function." *Cleveland City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 90 Ohio App.3d 505, 513 (8th Dist. 1993).

{¶ 16} "An abuse of discretion 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A court commits an abuse of discretion by "exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 35.

{¶ 17} In conducting its review, the appellate court must not "substitute its judgment for that of the administrative agency or trial court absent a clear abuse of discretion"; it is "immaterial" whether the appellate court would have reached a different conclusion than SERB. *Cleveland City School Dist.* at 513, citing *Lorain*

*City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257 (1988). However, "It is the role of the judiciary, not administrative agencies, to make the ultimate determination about what the law means. Thus, the judicial branch is never required to defer to an agency's interpretation of the law." *TWISM Enters., L.L.C. v. State Bd. of Registration of Professional Engineers & Surveyors*, 2022-Ohio-4677, ¶ 3. Likewise, this court does not afford deference to SERB's interpretation of the CBA; rather "contract interpretation has generally been considered the 'expertise of the judiciary.'" *Lakewood v. State Emp. Relations Bd.*, 66 Ohio App.3d 387, 391 (8th Dist. 1990). When construing a contract, the court examines the contract as a whole to discern and give effect to the parties' intent. *See MRI Software, L.L.C. v. West Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, ¶ 27 (8th Dist.). "When the contract is clear and unambiguous, the court may look no further than the four corners of the contract to find the intent of the parties." *Id.*, citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978).

**B. The *Cleveland* Cases: Two Recent Rulings on Waiver Claims Based on Similar CBA's**

{¶ 18} At the outset, we note that this court has recently, in two separate cases, considered and rejected the City's claims of waiver based on collective-bargaining agreement terms identical to those at issue in this case. *See Cleveland v. State Emp. Relations Bd.,* 2024-Ohio-3018 (8th Dist.) (*"Cleveland I"*), and *Cleveland v. State Emp. Relations Bd.,* 2024-Ohio-4787 (8th Dist.) (*"Cleveland II"*).

{¶ 19} In *Cleveland I,* the union, the Cleveland Association of Rescue Employees ("CARE"), challenged the City's efforts to hire part-time, non-union

paramedics to remedy staffing shortages. The City argued CARE had waived any requirement to bargain the hiring of part-time paramedics when CARE agreed to certain provisions in its CBA with the City. One of the provisions identified by the City, and referred to by the *Cleveland I* Court as the "reservation of rights" clause, included language identical to the Management Rights Clause of the CBA at issue in this case. The other concerned a "zipper" clause, which is identical to the "Witnesseth" clause found at the opening paragraph of the CBA at issue in this case.[2]

{¶ 20} In *Cleveland I*, this court concluded that the trial court did not abuse its discretion when it upheld SERB's decision, finding that the collective-bargaining agreement did not include an explicit waiver of the right to bargain the effects of the reassignment of work to nonbargaining employees. This court determined that "in order for the City to have the ability to reassign work to non-bargaining unit

---

[2] Here the City asserts that its waiver argument is not dependent on the "Witnesseth" clause of the CBA. The "Witnesseth" clause, found at the beginning of the CPPA's CBA, provides:

> The parties acknowledge that during the negotiations and/or interest arbitration which resulted in this Contract each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law or regulation from the area of collective bargaining and that the understanding and agreements arrived at by the parties after the exercise of those rights and opportunities are set forth in this Contract. Therefore, the parties voluntarily waive the right to demand new proposals on any subject or matter, not included herein, during the term of this Contract, even though such subject matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Contract. If an agreement is reached between the Union and the City, any such supplemental agreement shall be in writing and subject to the prior approval of the Executive Board of the Union and the City or their respective designated representatives.

members without negotiating with [the union], there must be a reservation of that right in the CBA or a specific waiver of such right in the CBA." *Cleveland I* at ¶ 27.

{¶ 21} While this court recognized that the union had waived the right to bargain managerial decisions when it agreed to the "reservation of rights" clause, the union had not waived the right to bargain the *effects* of managerial decisions. This court explained:

> [W]e do not read the zipper clause and the reservation of rights clause in the [collective bargaining agreement] to operate as an explicit waiver of [the union's] right to require the City to bargain the reassignment of work and we find that the trial court did not abuse its discretion in determining [the union] did not explicitly waive the right to bargain the hiring of part-time employees who would be assigned bargaining unit work.

*Cleveland I* at ¶ 29.

{¶ 22} In *Cleveland II*, this court found that the trial court did not abuse its discretion when it upheld SERB's decision that the collective-bargaining agreement did not expressly waive the City's obligation to bargain the effects of the installation of dash-cameras in City ambulances. This court recognized that the use of technology was a "permissive managerial right." However, the effects of the camera installation were subject to mandatory bargaining. *Cleveland II* at ¶47.

{¶ 23} The *Cleveland II* Court analyzed the claim of waiver as it related to the entirety of Article 3 of the CBA. This court repeatedly addressed the "waiver" and "zipper" clauses of Article 3 of the CBA and quoted the two clauses in their entirety. *Cleveland II* at ¶ 41. The two clauses are, respectively, identical to the

Management Rights Clause at issue in this case and to the Witnesseth clause, not relied on here.

{¶ 24} This court acknowledged that in both *Cleveland I* and *II,* "the City argued that the Union waived its right to bargain the issue in CBA Art. 3 under the zipper and waiver clauses." *Cleveland II* at ¶ 47. After further analysis, this court concluded, "[W]e also do not find that CBA Art. 3 clearly and expressly waives the City's obligation to bargain the effects of the camera installation." *Id*. at ¶ 51.

## C. Application

{¶ 25} As noted, the City contends that the CPPA waived the right to bargain the effects of the 2022 WCS policy change relying on the Management Rights Clause found at Article 3, Section 4 of the CBA.

{¶ 26} The Management Rights Clause refers to R.C. 4117.08, entitled: "Matters subject to collective bargaining." R.C. 4117.08, in pertinent part, states:

> (A) All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section and division (E) of section 4117.03 of the Revised Code.
>
> . . .
>
> (C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117 of the Revised Code impairs the right and responsibility of each public employer to:
>
> . . .
>
> (5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees;

. . .

> The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit *except as affect wages, hours, terms and conditions of employment,* and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement. A public employee or exclusive representative may raise a legitimate complaint or file a grievance based on the collective bargaining unit.

(Emphasis added.)

{¶ 27} The CPPA argues that R.C. 4117.08(C) requires the City to bargain the inclusion of audio in buffering mode recording because this policy change "contains a disciplinary element that affects officers' wages, hours, and conditions of employment . . . ." For instance, audio recording in buffering mode would broaden the City's ability to monitor and enforce disciplinary regulations concerning inappropriate language. The City points out that, as of the time its appellate brief was prepared, "the City did not discipline any officers because of audio that had been captured during the 'buffering mode'"; however, the City has not disavowed using the WCS buffering mode-footage for this purpose and has admitted to disciplining officers for using profanity and insensitive language.

{¶ 28} Under the previous WCS policy, where audio was not recorded in buffering mode, an officer using language that could subject them to punishment could stop doing so upon switching to event mode. The officer had the ability to ensure that the WCS footage did not contain any record of their potentially punishable language because the buffering mode did not capture audio.

{¶ 29} Under the 2022 WCS policy, however, in the 30 seconds prior to receiving a call — an inherently unpredictable event — the officer's communications, which may include potentially punishable language, would be captured. The City could then use the footage to discipline the officer. If an officer tried to prevent this outcome by waiting for a new buffering loop that did not include the offensive language by delaying switching into event mode, creating that artificial delay would be a punishable violation of the WCS policy. The CPPA points to this scenario as one of many where audio recording from the WCS buffering mode could be used to discipline previously undisclosed conduct.

{¶ 30} We agree with the CPPA that the inclusion of audio recording in the WCS buffering mode has a "disciplinary element that affects wages, hours, or other conditions of employment." These effects thus fall within the right governed by R.C. 4117.08(C), which provides that "the employer is not required to bargain on subjects reserved to the management and direction of the governmental unit *except as affect wages, hours, terms and conditions of employment,* and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement." (Emphasis added.) *Cleveland I* at ¶ 28. Absent a waiver of this right, the effects of the WCS policy change should have been bargained.

{¶ 31} In considering whether the CPPA waived its right to bargain the effects of the 2022 WCS policy change, this court is guided by the principle that it will not conclude that the CPPA waived "a statutory right absent a 'clear and unmistakable' waiver." *State Emp. Relations Bd. v. Brookpark,* 2012-Ohio-5716,

¶ 17 (8th Dist.), quoting *Lakewood,* 66 Ohio App.3d at 392. As this court explained in *Lakewood,* "Unless a collective bargaining agreement specifically eliminates a right provided an employee by statute, an employee retains his entitlement to that right." *Id.*

{¶ 32} Applying this court's recent precedent, we find that the phrase "[n]otwithstanding §4117.08" does not "specifically eliminate" the right to bargain the effects of the change to the WCS policy and is not sufficient to waive the CPPA's statutory right to bargain the effects of the decision in relation to wages, hours, terms, and other conditions of employment. *See Cleveland II* at ¶ 51 (This court found that the same language in the collective-bargaining agreement did not waive the union's right to bargain the effects of the installation of dash cameras because this installation created a new condition of employment.). The Management Rights Clause does not demonstrate the CPPA "consciously yielded its statutory right" to bargain the effects of the change in WCS policy that affected wages, hours, terms, or other conditions of employment. *Id.*

{¶ 33} For the forgoing reasons, we find that the trial court did not abuse its discretion in affirming the order and opinion of SERB, which determined that the City violated R.C. 4117.11(A)(5) by failing to bargain the effects of the WCS policy change. We overrule the City's sole assignment of error and affirm the ruling of the trial court.

{¶ 34} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LISA B. FORBES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MICHAEL JOHN RYAN, J., CONCUR