OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Evergreen Land Development, Ltd., appeals the decision of the Mahoning County Court No. 5 that granted judgment to Plaintiff-Appellee, Scott Myers dba Creative Efforts, on Myers' breach of contract claim against Evergreen. On appeal, Evergreen argues four assignments of error challenging various factual findings made by the court. However, the record contains competent, credible evidence supporting each of the trial court's findings. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 2} Evergreen is a company which develops residential property. As part of its business, Evergreen hires landscapers to turn unfinished property into finished property for the purposes of sale.
 {¶ 3} Myers works in the landscaping business. Myers is the sole shareholder of two businesses: Eden's Gate Landscaping and Garden Center, a for-profit corporation, and Truth and Associates Ministries, a non-profit corporation.
 {¶ 4} In the summer of 2005, Eden's Gate placed a bid to perform landscaping work for Evergreen, but that bid was rejected. Myers then submitted another bid under the name "Creative Efforts" to perform landscaping work on a set of properties for Evergreen. This bid was accepted and Evergreen issued purchase orders to Creative Efforts for those properties. Those purchase orders stated that Myers was to be paid $4,500.00 for each property. This price was arrived at by splitting Myers' total bid evenly among the subject properties. Since some of these properties were bigger than others, Myers could lose money on one purchase order, while making a profit on others.
 {¶ 5} Before Myers began work for Evergreen in the summer of 2005, he told Evergreen that he would need a materials deposit before he could begin work. Tom Zebrasky, a 49% shareholder in Evergreen complied with this request and issued a $6,000.00 check to "Eden's Gate." Over the course of the summer, minor issues arose regarding Myers' work on the property: Myers caused a confrontation with another contractor by running over an extension cord with his equipment and damaged a deck on *Page 2 
one of the houses. However, Zebrasky thought these issues were minor and common in construction projects.
 {¶ 6} Myers was unable to work on seven of the parcels for which he had purchase orders before the 2005 landscaping season ended. Three of those parcels were bigger than the other four parcels. Before the 2006 season began, Zebrasky had a falling out with the other shareholder in Evergreen, left the business, and a new management team was installed over the project. This new management team told all of its contractors, including Myers, that it needed proof of insurance and a W-9 tax form from each of them. Myers did not supply Evergreen with these documents.
 {¶ 7} At the beginning of the 2006 landscaping season, Myers approached Evergreen's project manager to ask when he would begin working on the remaining seven purchase orders. Myers told him that he really needed the income. That employee then gave Myers $200.00 out of his personal funds. That employee later left Evergreen's employment and Myers was unable to repay him. Soon thereafter, Myers was informed that Evergreen was terminating the remaining seven purchase orders.
 {¶ 8} Myers filed a complaint against Evergreen on May 15, 2006, alleging both breach of contract and unjust enrichment. Myers' unjust enrichment claim was based on his allegation that Evergreen terminated his contracts as he was about to begin the more profitable part of the work. That matter proceeded to a bench trial on June 8, 2007. At that trial, Evergreen argued that one of Myers' corporations, and not Myers himself was the real party in interest. At the end of the trial, the trial court found that Myers was the real party in interest, granted judgment to Evergreen on Myers' unjust enrichment claim, and granted judgment to Myers on his breach of contract claims.
 {¶ 9} In this appeal, Evergreen challenges the decisions the trial court made after a bench trial. According to the Ohio Supreme Court, this court must be "guided by a presumption" that the fact-finder's findings are correct. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 79-80. "[A]n appellate court should not substitute its judgment for that of the trial court when there exists, as in this case, competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial *Page 3 
judge." Id. at 80. Thus, this court should not overturn the trial court's decision unless it concludes that its decision is against the manifest weight of the evidence. Id. A judgment is not against the manifest weight of the evidence if it is supported by "some competent, credible evidence going to all the essential elements of the case."C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 Real Party in Interest {¶ 10} In the first of four assignments of error, Evergreen argues:
 {¶ 11} "The trial court erred by denying Defendant-Appellant Evergreen Land Development, Ltd.'s motion to dismiss Plaintiff-Appellee Scott Myers dba Creative Efforts' complaint because Plaintiff-Appellee Scott Myers dba Creative Efforts was not a real party in interest."
 {¶ 12} Evergreen contends that one of Myers' corporations, and not Myers himself was the real party in interest in this lawsuit and, therefore, the trial court should have dismissed this case. Myers argues that he is the real party in interest since he is the one who actually performed the work and was scheduled to perform the work.
 {¶ 13} Under Ohio law, "if a claim is asserted by one who is not the real party in interest, then the party lacks standing to prosecute the action." State ex rel. Jones v. Suster, 84 Ohio St.3d 70, 77, 1998-Ohio-0275; Civ.R. 17(A). The "real party in interest" is one who is directly benefited or injured by the outcome of the case. Shealy v.Campbell (1985), 20 Ohio St.3d 23, 24. The purpose of this rule is so the defendant can avail himself of evidence and defenses that the defendant has against the real party in interest, to assure the defendant of the finality of the judgment, and to protect the defendant against another suit brought by the real party at interest on the same matter. Id. at 24-25. When an action is prosecuted in the name of the real party in interest, and that party is awarded judgment, the party against whom the judgment is awarded is protected from the possibility of multiple judgments against him. See Oda v. Davis (1992),81 Ohio App.3d 555.
 {¶ 14} "To determine whether the requirement that the action be brought by the real party in interest is sufficed, courts must look to the substantive law creating the right *Page 4 
being sued upon to see if the action has been instituted by the party possessing the substantive right to relief." Id. at 25. Put another way, the test for determining who is a real party in interest is: "Who would be entitled to damages?" Young v. Merrill, Lynch, Pierce, Fenner Smith, Inc. (1993), 88 Ohio App.3d 12, 16. A party who is not a real party in interest lacks standing to invoke the jurisdiction of the court and is not entitled to judgment as a matter of law. First Union Natl.Bank v. Hufford, 146 Ohio App.3d 673, 2001-Ohio-2271, at ¶ 13.
 {¶ 15} Whether the plaintiff is a real party in interest is an affirmative defense. State ex rel. Jones at 77. The defendant bears the burden of proving an affirmative defense. Young v. Frank's Nursery Crafts, Inc. (1991), 58 Ohio St.3d 242, 244. Accordingly, we must determine whether Evergreen has proven that Myers is not the real party in interest. This is an issue which this court reviews de novo if the facts are established. Cuyahoga Cty. Bd. of Commrs. v. State,112 Ohio St.3d 59, 2006-Ohio-6499, at ¶ 23.
 {¶ 16} In this case, the facts are not established. It is clear that Evergreen entered into contracts with Creative Efforts and that those contracts form the basis of this lawsuit, but it is unclear whether Creative Efforts was actually Myers or one of his corporations.
 {¶ 17} Evergreen argues that one of the corporations owned and operated by Myers, rather than Myers himself, was doing business under the name of Creative Efforts and, therefore, that one of these corporations is the real party in interest. Some of the evidence in the record supports such a conclusion. For instance, Myers twice testified that Truth and Associates Ministries, a non-profit corporation run by Myers, does business as Creative Efforts. In addition, Myers' for-profit corporation, Eden's Gate Landscaping and Garden Center, is in the landscaping business and had placed a bid to perform work for Evergreen.
 {¶ 18} However, Myers strongly denied that Eden's Gate ever operated as Creative Efforts. Furthermore, he testified that Truth and Associates could not do business as Creative Efforts since it was not-for-profit, while Creative Efforts was a for-profit enterprise. According to Myers, he thought he could run a for-profit enterprise through a *Page 5 
non-profit corporation. However, he believes he erred by running the for-profit enterprise as a "dba," rather than incorporating the for-profit enterprise. He believes he failed to properly insulate himself from liability and, therefore, was himself doing business as Creative Efforts.
 {¶ 19} After hearing this testimony, the trial court concluded that Myers was the real party in interest. The evidence supports such a decision, especially considering the fact that Evergreen bore the burden of proving that Myers was not the real party in interest. Accordingly, Evergreen's first assignment of error is meritless.
 Termination of Contract {¶ 20} In its second assignment of error, Evergreen argues:
 {¶ 21} "The trial court erred by entering judgment in favor of Plaintiff-Appellee Scott Myers dba Creative Efforts against Defendant-Appellant Evergreen Land Development, Ltd. because Defendant-Appellant Evergreen Land Development, Ltd. properly terminated the contracts."
 {¶ 22} Evergreen does not dispute the fact that it breached the contracts. Instead, it contends that the trial court erred by finding that it had improperly terminated the contracts between it and Myers had committed an anticipatory breach and had breached his implied duty of good faith.
 Anticipatory Breach {¶ 23} "An anticipatory breach of contract by a promisor is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived." McDonald v. Bedford Datsun (1989),59 Ohio App.3d 38, 40. The repudiation must be expressed in clear and unequivocal terms. Id. To prevail on a claim of anticipatory breach of contract, the party claiming anticipatory breach must establish that there was a contract containing some duty of performance not yet due and, by word or deed, the other party refused future performance, causing damage to the plaintiff. Id.
 {¶ 24} In the past, we affirmed a trial court's conclusion that there was no anticipatory breach when there is no direct evidence of an intention to breach the contract. For example, in Eaton v. Ann-LCorp., 7th Dist. No. 06 CO 53, 2007-Ohio-2759, *Page 6 
one party wanted to orally modify the contract and the other party refused. This court found that this did not constitute an anticipatory breach since there was no indication that the party refusing to modify the contract wouldn't perform as originally agreed. Id at ¶ 17-22.
 {¶ 25} In this case, the evidence supports the trial court's conclusion that Myers did not clearly and unequivocally state that he would not perform his end of the bargain without first receiving a materials deposit. According to Myers' testimony, he and Evergreen's employees had the following conversation: "[H]e said, `Hey, we're about ready to get rolling here." And so, okay, well, which ones do you want to do, blah, blah. And I said, "I need my deposit and I can get started any time." Myers later clarified that this was a request for a material deposit. Evergreen did not introduce any evidence supporting a conclusion that Myers would not perform the work unless he was first given a material deposit. Thus, the evidence supports the trial court's conclusion that Myers did not commit an anticipatory breach. Evergreen's argument to the contrary is meritless.
 Implied Duty of Good Faith {¶ 26} Evergreen next argues that there is an implied duty of good faith in the contract and that Myers violated that duty in multiple ways: 1) by causing a confrontation with another contractor; 2) by not repaying an Evergreen employee after borrowing money from that employee; 3) by soliciting residents of Evergreen's community for money; and, 4) by not providing Evergreen with a certificate of insurance and W-9 form. Evergreen admits that the contracts did not specifically address any of these issues. Nevertheless, it argues that "common sense" dictates that these behaviors are unacceptable.
 {¶ 27} In Ohio, the common law imposes an implied duty of good faith in the performance of some contracts. B-Right Trucking Co. v. InterstatePlaza Consulting, 154 Ohio App.3d 545, 2003-Ohio-5156, at ¶ 32. This duty "`is not an invitation to the court to decide whether one party ought to have exercised privileges expressly reserved in the document. "Good faith" is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of *Page 7 
drafting, and which therefore was not resolved explicitly by the parties.'" Ed Schory Sons, Inc. v. Soc. Natl. Bank, 75 Ohio St.3d 433,443-444, 1996-Ohio-0194, quoting Kham Nate's Shoes No. 2, Inc. v.First Bank of Whiting (C.A.7, 1990), 908 F.2d 1351, 1357-1358:
 {¶ 28} An obligation of good faith generally arises only where a matter was not resolved explicitly by the parties. Id. at 444. Thus, the duty is not imposed when a matter is specifically covered by the written terms of a contract. Hamilton Ins. Serv., Inc. v. Nationwide Ins.Cos. (1999), 86 Ohio St.3d 270, 274, 1999-Ohio-0162. Instead, this duty is implied only under limited circumstances, such as when the contract is silent as to an issue. In such a case, the parties must use good faith in filling the gap. Burlington Resources Oil Gas Co. v. Cox
(1999), 133 Ohio App.3d 543, 547. When the contract involves sophisticated businessmen, this duty is even more limited. Fultz Thatcher v. Burrows Group Corp., 12th Dist. No. CA2005-11-126,2006-Ohio-7041, at ¶ 37.
 {¶ 29} In this case, Evergreen was a development company which was operated by people with years of experience in the development business. It was clearly a sophisticated business run by sophisticated businessmen. Accordingly, any implied duties owed to it are very limited.
 {¶ 30} With this in mind, it is clear that some of Evergreen's arguments are not supported by the evidence. For instance, Evergreen contends that Myers borrowed money from one of its employees, but never paid that employee back. Myers' version of events is very different. According to Myers, Dan Straub, Evergreen's project manager for the development, had told Myers that he would begin work soon, so Myers left his schedule open to complete the contracts. After time passed and Evergreen did not ask Myers to begin work, Myers approached Straub to tell him that he was having cash flow problems due to the failure to promptly start on the projects. Straub then gave Myers two hundred dollars cash. Myers did not, at first, realize this was Straub's personal money. Straub never testified and no evidence was introduced to contradict Myers' version of events.
 {¶ 31} Thus, the evidence in the record supports a finding that Myers did not solicit *Page 8 
a loan from Straub. The trial court could have reasonably believed that Straub decided to help out one of his contractors until the work actually started. This event does not support a reversal of the trial court's judgment because of a breach of a duty of good faith.
 {¶ 32} The same can be said true of the allegations that Myers was soliciting money from the residents of Evergreen's community. Myers denied making these kinds of solicitations. The only evidence Evergreen could produce was double hearsay. It's general manager stated that Straub told him that some of the residents had told Straub that Myers had been making these kinds of solicitations. The trial court could have chosen to believe Myers and the evidence in the record supports such a decision. A partner in Evergreen, Tom Zebrasky, testified that the incident where Myers had a confrontation with another contractor was also not a basis for cancelling a contract. According to Zebrasky, that kind of thing happens in the course of construction and was not an issue as far as he was concerned. Evergreen's general manager did not include this incident in a list of factors leading to the termination of the contract. Thus, this allegation also does not support a reversal of the trial court's decision.
 {¶ 33} The final way that Evergreen argues that Myers violated his duty of good faith is by failing to provide Evergreen with a W-9 and a certificate of insurance at Evergreen's request. Myers argues that he was never informed that the contract would be terminated if he failed to provide these forms and that requiring these forms introduced a condition not bargained on by the parties.
 {¶ 34} When a party wishes to impose specific obligations upon the other contracting party on a matter not central to the contract, those obligations must be bargained for and included in the contract.Fultz Thatcher v. Burrows Group Corp., 12th Dist. No. CA2005-11-126,2006-Ohio-7041, at ¶ 37. Such conditions cannot be implied under the duty of good faith. Id.
 {¶ 35} It could be argued that it is central to the contract that Myers supply Evergreen with both of these documents. For instance, the testimony introduced at trial shows that the obligation for Myers to supply Evergreen with a W-9 was central to the *Page 9 
contract. A W-9 is a tax form which Evergreen receives from its contractors so it can make proper reports to the IRS. Since Myers could not have properly provided services to Evergreen without providing Evergreen with this form, it is arguably central to the contract. Similarly, Evergreen needed proof that Myers was insured so it wasn't exposed to liability in case of an accident.
 {¶ 36} Nevertheless, the trial court did not err when it refused to find that Myers breached his duty of good faith by failing to supply these documents to Evergreen. There is no indication that Myers was trying to "take opportunistic advantage" of Evergreen by failing to supply these documents. Ed Schory Sons at 444. Instead, it shows that both Myers and Evergreen were a bit sloppy in their paperwork. It is difficult to see how this sloppiness on the part of both parties constitutes a breach of good faith by one of the parties.
 {¶ 37} When taken as a whole, we cannot conclude that the trial court erred when it did not find that Myers breached an implied duty of good faith toward Evergreen. Accordingly, Evergreen's arguments in this regard are meritless.
 {¶ 38} Since both of the arguments in Evergreen's second assignment are meritless, the assignment of error as a whole is meritless.
 Mitigation of Damages {¶ 39} In its third assignment of error, Evergreen argues:
 {¶ 40} "The trial court erred by implicitly finding that Defendant-Appellant Evergreen Land Development, Ltd. failed to establish that Plaintiff-Appellee Scott Myers dba Creative Efforts failed to mitigate his damages."
 {¶ 41} A party to a contract has the duty to make reasonable efforts to mitigate any damages caused by a breach of the contract. Dennis v.Morgan, 89 Ohio St.3d 417, 419, 2000-Ohio-0211. Whether a party has failed to mitigate his damages is an affirmative defense and the breaching party bears the burden of proving that the other party did not use reasonable efforts to mitigate his damages. State ex rel. Stacy v.Batavia Local School Dist. Bd. of Edn., 105 Ohio St.3d 476,2005-Ohio-2974, at ¶ 46; Applecrest Village Ltd. Partnership v.Yaple, 7th Dist. No. 01-CA-185, 2003-Ohio-0695, at ¶ 21. Efforts to *Page 10 
mitigate are reasonable if the aggrieved party uses ordinary care and reasonable diligence to offset the damages resulting from the breach of the contract. Frenchtown Square Partnership v. Lemstone, Inc., 7th Dist. No. 99 CA 300, 2001-Ohio-3245, affirmed Frenchtown Square Partnership v.Lemstone, Inc., 99 Ohio St.3d 254, 2003-Ohio-3648. The reasonableness of the efforts to mitigate damages is properly decided by the trial court.Dennis at 419.
 {¶ 42} Evergreen admits that Myers testified that he tried contacting people, including "old contacts," in an effort to find other work after Evergreen terminated his contract, but contends that this vague testimony is insufficient to demonstrate that he made reasonable efforts to mitigate his damages.
 {¶ 43} The only evidence regarding mitigation in this case was elicited during Evergreen's cross-examination of Myers.
 {¶ 44} "Q: Prior to you undergoing surgery you had September, October, November and December 2006, did you contact any companies or any individuals about providing service in an attempt to procure contracts for the next landscaping-
 {¶ 45} "A: Actually, after getting the letter cancelling the contracts, I went to the lake — to the nursery where I procured materials for that job, purchased additional material that I had set aside from the prior year to use over there. And I stayed on my property. And I sold hanging baskets, some trees and shrubs. And I did my specialty stone work. And I grabbed a hold of whatever I can whenever I could.
 {¶ 46} "Q: Did you put an ad in the newspaper?
 {¶ 47} "A: No, I didn't. I didn't have the money to do it.
 {¶ 48} "Q: Did you make any phone calls to any businesses?
 {¶ 49} "A: I'm sure I called some of my old contacts seeing if they had anything, you know. I made it so I had done what I could to procure additional work. You have to survive.
 {¶ 50} "Q: Did you contact anybody after you received the April 2006 termination letter?
 {¶ 51} "A: I'm sure I did. *Page 11 
 {¶ 52} "Q: Who did you call?
 {¶ 53} "A: I have no idea. You know, I started this business from nothing, you know, by going out, being aggressive and going to work. I don't remember every person I talked to. All I know is that chances are, if it's between 6:00 o'clock in the morning and 6:00 o'clock at night I'm working; whether it's Sunday, Monday, Tuesday, Wednesday, Thursday, Friday or Saturday. So I find something to do.
 {¶ 54} "Q: Well, you said you had some old contacts. Who are your old contacts?
 {¶ 55} "A: * * * I don't recall.
 {¶ 56} "Q: So you called people but you don't recall who you called?
 {¶ 57} "A: No, it's been a year and a half ago."
 {¶ 58} Appellate courts have generally found that there does not need to be a great deal of evidence in the record to support a trial court's decision that a plaintiff has made reasonable efforts to mitigate its damages. For example, the Second District affirmed a trial court's judgment that a plaintiff had made reasonable efforts to mitigate the damages from a breach of a lease agreement by putting a "for rent" sign out the day after the breach, since the testimony revealed that any other efforts would be unavailing at that time of year. Kanistros v.Holeman, 2d Dist. No. 20528, 2005-Ohio-0660, at ¶ 37.
 {¶ 59} Similarly, the plaintiff in Hines v. Riley (1998),129 Ohio App.3d 379, was a landlord suing a tenant vacating a rental premises prior to the expiration of the lease term. The tenant tried arguing that the landlord did not make reasonable efforts to mitigate its damages, but the appellate court disagreed.
 {¶ 60} "In this case, Riley and Straight had the burden of proving that Hines failed to mitigate damages. They presented evidence that many people expressed an interest in the apartment for the following school year, but no evidence regarding the demand for apartments in the middle of the school year. Nor did Riley or Straight present evidence regarding when spring quarter began in relation to when Hines ran or should have run the newspaper advertisements.
 {¶ 61} "Hines testified that she ran at least one advertisement on an unknown *Page 12 
date, and we must presume that she ran that advertisement a reasonable period of time before the start of spring quarter. Hines's testimony that she showed the apartment to several people who responded to the advertisement constitutes evidence that some prospective tenants were looking for housing at the time she advertised." Id. at 383-384.
 {¶ 62} The appellate court concluded that the trial court erred when it found that the landlord had not made reasonable efforts to mitigate its damages.
 {¶ 63} In this case, Myers testified that he did not run an advertisement in the newspaper. However, he did contact the people who had helped him make his business grow in the first place. As Myers testified, he had to "survive" and, therefore, kept finding new work. Evergreen did not introduce any evidence showing the extent to which these efforts mitigated Myers' damages. Accordingly, the evidence supports the trial court's conclusion that Myers made reasonable efforts to mitigate his damages. Evergreen's arguments to the contrary are meritless.
 Calculation of Damages {¶ 64} In its final assignment of error, Evergreen argues:
 {¶ 65} "The trial court erred by utilizing an improper method of calculating Plaintiff-Appellee Scott Myers dba Creative Efforts' damages when the trial court entered judgment in favor of Plaintiff-Appellee Scott Myers dba Creative Efforts against Defendant-Appellant Evergreen Land Development, Ltd. in the amount of Fifteen thousand and 00/100 dollars ($15,000.00)."
 {¶ 66} Myers' claim for damages in this case was for lost profits that he would have earned had he been allowed to perform the contracts. The Ohio Supreme Court has held that a party can recover lost profits in a breach of contract case if: 1) the parties contemplated that the plaintiff would earn profits when they entered into the contract, 2) the loss of profits is the probable result of the breach of contract, and 3) the profits are not remote and speculative and may be shown with reasonable certainty. Charles R. Combs Trucking, Inc. v. Internatl.Harvester Co. (1984), 12 Ohio St.3d 241, paragraph two of the syllabus. In this case, Evergreen only challenges the trial court's calculation of damages under the third factor and does not challenge the fact that Myers established the first two *Page 13 
factors.
 {¶ 67} In order to establish lost profits, a "party must show not only `(a) what he would have received from the performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom). Unless he proves both of those facts, he cannot recover as damages the profits he would have earned from full performance of the contract.'" Digital Analog Design Corp. v. NorthSupply Co. (1989), 44 Ohio St.3d 36, 40, quoting Allen, Heaton McDonald, Inc. v. Castle Farm Amusement Co. (1949), 151 Ohio St. 522,526. Both the existence and amount of lost profits must be demonstrated with reasonable certainty. Gahanna v. Eastgate Properties, Inc. (1988),36 Ohio St.3d 65, syllabus.
 {¶ 68} Myers estimated that he would earn between $1,500.00 and $1,700.00 on each of the seven contracts which are the subject of this suit. However, an estimate of the profits expected to be earned absent a breach, without more, is insufficient to establish the amount of lost profits to which a plaintiff is entitled. GMS Management Co., Inc. v.Datillo (June 15, 2000), 8th Dist. No. 75838, at 14. Myers then testified about the "cost" of various aspects of the job. For example, he gave the price per yard of the sod, mulch, and other aspects of the landscaping "installed." It appears the trial court did not accept these valuations as the costs for Myers involved in the work, since these costs do not result in profits approaching those calculated by the trial court. Instead, it appears the trial court concluded that these were actually the costs to Myers' customers, hence the use of the word "installed." Since the record supports such a conclusion, we must accept that finding.
 {¶ 69} In this case, the trial court concluded that Myers would have earned a $2,100.00 profit on three of the contracts and $2,700.00 on four of the contracts. The trial court did not explain how it came to this conclusion, but a review of the transcript shows a strong candidate for such a conclusion. The person who took over Myers' contracts to landscape those seven properties testified that her costs for three of those properties were around $2,400.00 and that her costs on the other four properties were about $1,800.00. Thus, she would have made $2,100.00 on three houses and $2,700.00 on *Page 14 
the other four houses had she been paid $4,500.00 per house, the amount of Myers' contract price. Since this was the exact valuation of the profit the trial court found, it presumably relied on this information when making its damages calculation.
 {¶ 70} Evergreen argues the trial court could not have relied on these figures since they involve the costs of its new landscaper and not Myers' costs. However, she testified that the landscaping she provided was basically the same that Myers had contracted to provide. Thus, it would be reasonable for the trial court to conclude that her costs were similar to what Myers' costs would have been had the contracts been honored. If it is reasonable to assume that Myers' costs would be the same as the costs to the person replacing him, then his profit would be exactly the amount calculated by the trial court.
 {¶ 71} In conclusion, there is some competent, credible evidence in the record supporting the trial court's calculations of damages. Accordingly, Evergreen's fourth assignment of error is also meritless.
 Conclusion {¶ 72} Evergreen raises four assignments of error challenging the judgment in Myers' favor, each of which challenge the trial court's factual findings. This means that we must use a manifest weight of the evidence standard to review Evergreen's arguments and there is competent, credible evidence supporting each of the challenged findings. Accordingly, the judgment of the trial court is affirmed.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1