[Cite as *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. State Emp. Relations Bd.*, 2017-Ohio-2624.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Municipal Construction          :
Equipment Operators' Labor Council,
                                              :
          Relator,
                                              :          No. 15AP-471
v.
                                              :          (REGULAR CALENDAR)
Ohio State Employment Relations Board,
                                              :
          Respondent.
                                              :

---

D E C I S I O N

Rendered on May 2, 2017

---

**On Brief:** *Climaco, Wilcox, Peca, Tarantino & Garofoli Co., L.P.A., Stewart D. Roll*, and *David M. Cuppage*, for relator.

**On Brief:** *Michael DeWine*, Attorney General, and *Lori Friedman*, for respondent.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

SADLER, J.

{¶ 1} Relator, Municipal Construction Equipment Operators' Labor Council ("MCEO"), has filed this original action seeking a writ of mandamus ordering respondent, Ohio State Employment Relations Board ("SERB"), to vacate its October 9, 2014 order that dismissed, for lack of probable cause, MCEO's unfair labor practice ("ULP") complaint against North Ridgeville City School District Board of Education ("BOE").

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who rendered a decision and recommendation that included findings of fact and conclusions of law, which is appended hereto. The magistrate concluded MCEO failed to establish that SERB abused its

discretion either by dismissing the ULP charge or failing to properly investigate the charge. Accordingly, the magistrate recommended that we deny the requested writ of mandamus.

{¶ 3} In *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Ohio State Emp. Relations Bd.*, 10th Dist. No. 15AP-471, 2015-Ohio-5001, this court held that venue for the relator's complaint was proper in Franklin County, and we denied the relator's motion to transfer this case back to the Ninth District Court of Appeals. In *MCEO*, the basic facts and procedural history of this case were set out as follows:

> Relator initially filed this original action in the Ninth District Court of Appeals. According to the complaint, following a SERB conducted election, relator was certified as the new exclusive representative of the non-teacher employees of BOE. Thereafter, relator and BOE commenced negotiations for a collective bargaining agreement ("CBA").
>
> According to the complaint, relator and BOE tentatively agreed upon 21 out of 44 CBA articles. In addition, relator advised BOE that it was prepared to accept BOE's proposal on eight additional CBA articles subject to reaching an agreement on compensation.
>
> Thereafter, BOE advised relator that BOE had determined that negotiations were at impasse and that the parties should proceed to mediation with the Federal Mediation and Conciliation Service pursuant to a provision in the existing CBA.
>
> According to the complaint, BOE's refusal to continue negotiations and its declaration of impasse is a violation of R.C. 4117.11(A)(5). Therefore, relator filed an unfair labor practice charge against BOE with SERB. BOE moved to dismiss that charge.
>
> According to the complaint, a SERB "labor relations specialist" issued an investigators memorandum recommending dismissal of the unfair labor practice charge. Thereafter, SERB issued a written order granting BOE's motion to dismiss for lack of probable cause.
>
> Relator alleges in its complaint that SERB failed to investigate the unfair labor practice charge.

*Id.* at ¶ 2-7.

{¶ 4} The SERB order dismissing MCEO's ULP complaint provides, in relevant part, as follows:

> The investigation revealed no probable cause existed to believe Charged Party violated Ohio Revised Code § 4117.11. Information gathered during the investigation revealed that the Charged Party acted in accordance with the provisions in the parties' collective bargaining agreement, when after forty-five (45) calendar days, it declared impasse.

(Stip. Record at 160.)

{¶ 5} "SERB's decision on whether to issue a complaint in an unfair labor practice case is not reviewable on direct appeal." *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Ohio State Emp. Relations Bd.*, 10th Dist. No. 10AP-195, 2011-Ohio-4478, ¶ 7, citing *State ex rel. Tritt v. State Emp. Relations Bd.*, 97 Ohio St.3d 280, 2002-Ohio-6437, ¶ 6. A writ of mandamus is available, however, "to remedy an abuse of discretion by SERB in dismissing a ULP charge." *Id.* See also *State ex rel. Murray v. Ohio State Emp. Relations Bd.*, 10th Dist. No. 15AP-1007, 2017-Ohio-839, ¶ 6, citing *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, ¶ 35. To obtain a writ of mandamus, relator must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' " *Kinsey v. Bd. of Trustees of Police & Firemen's Disability & Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consol. Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982).

{¶ 6} R.C. 4117.11(A) defines a ULP, in relevant part, as follows:

> It is an unfair labor practice for a public employer, its agents, or representatives to:
>
> * * *
>
> (5) Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code.

{¶ 7} The issue for the magistrate in this case was whether SERB abused its discretion when it dismissed MCEO's ULP complaint against BOE for lack of probable cause. An abuse of discretion means an unreasonable, arbitrary, or unconscionable decision. *Portage Lakes* at ¶ 35. The magistrate identified the dispositive inquiry in this case as whether Article 3.12 of the expiring collective bargaining agreement ("CBA") governed the parties' right to declare an impasse or whether the parties' right to declare an impasse arises only on the occurrence of an "ultimate impasse" as defined in the Ninth District Court of Appeals' decision in *Twinsburg City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 172 Ohio App.3d 535, 2007-Ohio-957 (9th Dist.).

{¶ 8} In *Twinsburg*, the local school district sought judicial review of the decision of SERB's ruling that the district committed a ULP by unilaterally imposing its final offer on its union employees. The trial court affirmed the SERB's decision and the district appealed.[1] In affirming the trial court, the Ninth District determined that the district committed a ULP under R.C. 4117.11(A)(5) when it unilaterally imposed its last, best offer on the employees even though the union was still willing to negotiate on every outstanding issue, and the district's negotiators had stated that negotiating sessions had been productive. *Id.* at ¶ 27. In order to establish an "ultimate impasse" under the Ninth District decision in *Twinsburg*, "there must be 'no realistic possibility that continuation of discussion at that time would have been fruitful.' " *Id.* at ¶ 15, quoting *Am. Fedn. of Television & Radio Artists, AFL-CIO, Kansas City Local v. Natl. Labor Relations Bd.*, 395 F.2d 622, 628 (C.A.D.C.1968).

{¶ 9} Conversely, Article 3.12 of the parties' CBA provides as follows:

> *If the parties are unable to reach agreement within forty-five (45) calendar days of the expiration of this agreement, either party may declare the issues to be at impasse. Thereupon, the parties will seek to resolve the impasse through mediation.* To this end, they shall request the assistance of the Federal Mediation and Conciliation Service. The FMCS shall appoint a federal mediator who will conduct mediation in accordance with its rules. The parties agree that this procedure set forth above shall be the exclusive dispute

---

[1] The common pleas court has jurisdiction of an appeal from a SERB decision "granting or denying, in whole or in part, the relief sought." R.C. 4117.13(D).

> resolution procedure and shall supersede those established in
> R.C. 4117.10, 4117.14, and related sections.

(Emphasis added.)

{¶ 10} The magistrate concluded that Article 3.12 of the expiring CBA governed the parties' rights in this case and that Article 3.12 gave either of the parties the right to declare an impasse if the parties were "unable to reach agreement within forty-five (45) calendar days of the expiration of this agreement." The magistrate noted that unlike the *Twinsburg* case, the result of the BOE's declaration of an impasse is not the imposition of the BOE's last, best offer. Rather, the expiring CBA requires the parties to submit the remaining disputed issues to mediation, the parties' chosen alternative dispute resolution process. Accordingly, the magistrate determined that SERB did not abuse its discretion when it determined that the *Twinsburg* case was inapplicable and that there was no probable cause to believe the BOE "refuse[d] to bargain collectively with the representative of his employees." R.C. 4117.11(A)(5).

**MCEO's Objections**

{¶ 11} MCEO has interposed numerous objections to both the magistrate's findings of fact and conclusions of law. Because a resolution of MCEO's objections to the magistrate's factual findings depends largely on this court's interpretation of Article 3.12 of the expiring CBA, we begin our analysis with the objections to the magistrate's conclusions of law.

**Objections to the Magistrate's Conclusions of Law**

{¶ 12} Though MCEO raises numerous objections to the magistrate's conclusions of law, the objections essentially raise the following three contentions for our review: (1) SERB abused its discretion when it determined that Article 3.12 of the CBA permitted the BOE to unilaterally declare an impasse in negotiations after the passage of the 45-day period even though MCEO remained willing to continue negotiations and there existed a reasonable possibility that further negotiations would be fruitful; (2) SERB abused its discretion when it dismissed the ULP complaint because the CBA contains an implied covenant of good faith which prevented the BOE from taking an opportunistic advantage of the 45-day provision in Article 3.12; and (3) SERB denied MCEO due process of law by granting the BOE's motion to dismiss the ULP complaint without conducting a thorough

investigation of the allegations in the complaint and without providing MCEO an opportunity to respond to the motion.

{¶ 13} With regard to MCEO's first argument, the magistrate determined that Article 3.12 of the expiring CBA permitted either party to declare an impasse in negotiations when, after the 45-day period had elapsed, the parties were unable to reach an agreement. The magistrate concluded that Article 3.12 did not require the parties to agree that negotiations were at an impasse or for the party electing to declare an impasse to prove that there existed no reasonable possibility that future negotiations would be fruitful. In our view, the plain language of Article 3.12 of the expiring CBA supports the magistrate's conclusion.

{¶ 14} MCEO next contends that the magistrate applied an incorrect standard of review in deferring to SERB's interpretation of Article 3.12 of the CBA rather than conducting a de novo review to determine the parties' intent.

{¶ 15} " 'A collective bargaining agreement is a contract, and "[t]he overriding concern of any court when construing a contract is to ascertain and effectuate the intention of the parties." ' " *Koehring v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 06AP-396, 2007-Ohio-2652, ¶ 20, quoting *State ex rel. Kabert v. Shaker Hts. City School Dist. Bd. of Edn.*, 78 Ohio St.3d 37, 44 (1997), quoting *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St.3d 271, 276 (1994). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Koehring* at ¶ 20, quoting *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus, following and approving *Blosser v. Enderlin*, 113 Ohio St. 121 (1925), paragraph one of the syllabus. When the terms of the parties' agreement are unambiguous and clear on their face, the court need not look beyond the plain language of the contract to determine the rights and obligations of the parties. *Beasley v. Monoko, Inc.*, 195 Ohio App.3d 93, 2011-Ohio-3995, ¶ 30 (10th Dist.).

{¶ 16} In *SERB v. State Office of Collective Bargaining*, 10th Dist. No. 91AP-939 (June 11, 1992), this court stated that "there is no statutory provision or case law which mandates that trial courts afford due deference to SERB's interpretation of a collective bargaining agreement." Our review of the magistrate's decision reveals that the magistrate simply applied Article 3.12 of the CBA, as written, without deferring to SERB.

We find that the relevant language of the CBA is clear and free of ambiguity, and we agree with the magistrate that Article 3.12 permits a party to declare an impasse in negotiations after 45 days, regardless of whether there is a reasonable possibility that further negotiations would be fruitful. Accordingly, MCEO's contention that the magistrate employed an incorrect standard of review is without merit.

{¶ 17} As the magistrate noted, it was clearly the intent of the General Assembly to vest SERB with the authority to administer and enforce R.C. Chapter 4117. Accordingly, the General Assembly also vested SERB with exclusive jurisdiction to determine ULPs defined in R.C. 4117.11. *E. Cleveland v. E. Cleveland Firefighters Local 500, Internatl. Assn. of Firefighters*, 70 Ohio St.3d 125, 128 (1994). R.C. 4117.14(A) "govern[s] the settlement of disputes between an exclusive representative and a public employer concerning the termination or modification of an existing collective bargaining agreement or negotiation of a successor agreement." R.C. 4117.14 further provides at subsection (E) that "[n]othing in this section shall be construed to prohibit the parties, *at any time*, from voluntarily agreeing to submit any or all of the issues in dispute to any other alternative dispute settlement procedure." (Emphasis added.)

{¶ 18} With regard to MCEO's good-faith argument, we note that neither the ULP complaint nor the complaint for a writ of mandamus allege that the BOE failed to negotiate in good faith during the seven-month period between January 2014, when negotiations commenced, and August 8, 2014, when the BOE declared an impasse. Rather, MCEO claims that the BOE refused to collectively bargain when it unilaterally declared an impasse even though MCEO remained willing to continue negotiations, and there existed a realistic possibility that continuation of discussion at that time would have been fruitful. R.C. 4117.01 defines the phrase "[t]o bargain collectively" in subsection (G) as follows:

> [T]o perform the mutual obligation of the public employer, by its representatives, and the representatives of its employees to *negotiate in good faith* at reasonable times and places with respect to wages, hours, terms, and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement, with the intention of reaching an agreement, or to resolve questions arising under the agreement. "To bargain

collectively" includes executing a written contract incorporating the terms of any agreement reached. *The obligation to bargain collectively does not mean that either party is compelled to agree to a proposal nor does it require the making of a concession.*

(Emphasis added.)

{¶ 19} The absence or presence of good-faith bargaining is determined objectively based on a consideration of the totality of the circumstances. *Akron v. State Emp. Relations Bd.*, 9th Dist. No. 26227, 2013-Ohio-1213, ¶ 7. The circumvention of the duty to bargain is unlawful, regardless of subjective good faith. *Id.* "In applying the totality of the circumstances test, permissible 'hard bargaining' is distinguishable from bargaining in bad faith." *Id.*, citing *Twinsburg* at ¶ 15-19.

{¶ 20} As stated above, we agree with the magistrate's conclusion that Article 3.12 of the expiring CBA grants either of the parties a right to declare an impasse in negotiations if, after 45 calendar days from the expiration of the CBA, the parties are unable to reach an agreement. The plain language of Article 3.12 of the expiring CBA does not require the existence of an objective impasse in negotiations, just that the parties are unable to reach an agreement within the allotted 45-day period. Accordingly, we also agree that the right to declare an impasse in negotiations exists under Article 3.12, regardless of whether one of the parties remains willing to negotiate and regardless of whether there is a realistic possibility that the continuation of negotiations will be fruitful.

{¶ 21} MCEO argues, however, that the BOE's right to declare an impasse under Article 3.12 is not absolute and that the party declaring an impasse under the expiring CBA must do so in good faith. In making this argument, MCEO relies on Ohio common law which imposes a duty of good faith on the parties to certain contracts. The Supreme Court of Ohio has described the general duty to exercise good faith and fair dealing as " '[a] compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.' " *Am. Contrs. Indemn. Co. v. Nicole Gas Prod. Ltd.*, 10th Dist. No. 07AP-1039, 2008-Ohio-5056, ¶ 14, quoting *Ed Schory & Sons v. Francis*, 75 Ohio St.3d 433, 443-44 (1996).

{¶ 22} Under the common law, not every contract is subject to an implied obligation of good faith and fair dealing. *Sammarco v. Anthem Ins. Cos., Inc.*, 131 Ohio App.3d 544, 555 (1st Dist.1998). The duty of common law is not imposed when a matter is specifically covered by the written terms of a contract. *Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 274 (1999). Rather, the duty is "implied only under limited circumstances, such as when the contract is silent as to an issue." *Myers v. Evergreen Land Dev. Ltd.*, 7th Dist. No. 07 MA 123, 2008-Ohio-1062, ¶ 28. In such a case, the parties are required to exercise good faith in filling the gap. *Id.*, citing *Burlington Resources Oil & Gas Co. v. Cox*, 133 Ohio App.3d 543, 547 (4th Dist.1999). For example, an obligation of good faith is imposed in contracts of insurance and certain commercial contracts arising under Ohio's Uniform Commercial Code, R.C. Chapter 1305. *Sammarco* at 555.

{¶ 23} Here, the parties' duty to perform their mutual obligations in good faith arises under R.C. 4117.01(G), rather than under the common law. To that end, the expiring CBA contains the parties' voluntary agreement to submit disputed issues to mediation if they are unable to reach agreement within the allotted 45-day time period. R.C 4117.14(E). Contrary to MCEO's assertion, the obligation to bargain in good faith under R.C. 4117.01(G) does not mean that the BOE can be compelled to continue negotiations directly with MCEO where the parties have contractually agreed to submit the disputed issues to mediation. *State ex rel. MARCA Edn. Assn. v. State Emp. Relations Bd.*, 10th Dist. No. 03AP-764, 2004-Ohio-2647 (SERB did not abuse its discretion in finding no probable cause that the employer committed a ULP by terminating mediation where the union and employer submitted their negotiations for a new CBA to mediation and the expiring CBA allowed either party to unilaterally terminate mediation).

{¶ 24} We also find no merit in MCEO's contention that the magistrate applied an erroneous standard in reviewing SERB's order. Our review of the magistrate's decision reveals that the magistrate both cited and applied the appropriate "abuse of discretion" standard in reviewing SERB's dismissal of MCEO's ULP complaint for lack of probable cause. (Mag. Decision at 3-4, citing *State ex rel. Leigh v. State Emp. Relations Bd.*, 76 Ohio St.3d 143 (1996).) *See also Murray* at ¶ 7. Furthermore, MCEO acknowledges in its

arguments in support of its objections that the abuse of discretion standard applies to our review of a SERB order dismissing a ULP complaint.

{¶ 25}    MCEO next contends that SERB denied it due process of law when it failed to adequately investigate the ULP charge.  With respect to SERB's investigation of the ULP complaint, this court set forth the relevant law in *MCEO*, 2011-Ohio-4478, at ¶ 10 as follows:

> SERB has established a rule providing that "[i]nvestigation of [ULP] charges shall be limited to the facts and issues raised in the charge and any facts or issues reasonably related to the charge." Ohio Adm.Code 4117-7-02(A). SERB's rules also provide that, upon a written request from an investigator, a party is required to submit information within the time deadline established by the investigator. Ohio Adm.Code 4117-7-02(D). This rule does not mandate that investigators use any specific method to obtain relevant information, but it clearly contemplates investigators using written requests for information to the parties.

{¶ 26}    The record shows that the SERB investigator submitted written requests for information to MCEO and to the BOE.  Therein, the investigator asked MCEO's representative to "please state specifically why you believe the Charged Party's conduct as alleged in the charge violates Ohio Revised Code § 4117.11.  Please provide documentation supporting your position."  (Stip. Record at 34.)  Therefore, the record shows that SERB permitted the parties to submit any relevant evidence and make supporting arguments.

{¶ 27}    Both MCEO and the BOE submitted responses to the investigator's written questions and supporting documentation.  Each of the parties submitted a detailed explanation of its position, along with supporting documentation.  Accordingly, the record does not support MCEO's allegation that SERB conducted an inadequate investigation of the ULP complaint.

{¶ 28}    MCEO has also contended that it was denied due process because it was not properly served with the BOE's motion to dismiss.  In his affidavit attached as an exhibit to MCEO's complaint for a writ of mandamus, MCEO's counsel maintains that he did not receive a copy of the BOE's motion to dismiss the ULP complaint because MCEO sent it to an incorrect e-mail address.  However, our review of the certificate of service attached to the motion filed with SERB evidences service to the correct e-mail address.

Therefore, the record does not support MCEO's claim that it was denied due process based on a lack of service.

{¶ 29}    Moreover, before SERB makes a determination that probable cause exists, there is no requirement for notice, hearing, and the opportunity for introduction of evidence.  *See* R.C. 4117.12; *Gunn v. Euclid Teachers Assn.*, 65 Ohio App.3d 312, 316 (8th Dist.1989).  As noted above, MCEO previously raised its arguments in support of the ULP complaint in response to the investigator's inquiry.  MCEO has raised no new arguments in this court that were not presented to SERB.  Accordingly, even if MCEO did not receive a copy of the BOE's motion to dismiss, a fact which the SERB record does not support, MCEO suffered no material prejudice because MCEO had an opportunity to submit its arguments in support of the ULP complaint and did so.  Accordingly, MCEO's contention it was denied due process is without merit.

{¶ 30}    For the foregoing reasons, we overrule MCEO's objections to the magistrate's conclusions of law.

**Objections to the Magistrate's Factual Findings**

{¶ 31} MCEO has also objected to a number of the magistrate's factual findings because it believes these findings are either incomplete or inaccurate.  MCEO claims the magistrate should have found additional facts relevant to its argument that the BOE refused to bargain in good faith when it elected to proceed to mediation pursuant to Article 3.12 of the expiring CBA.

{¶ 32} This court has stated that "Civ.R. 53(D)(3)(a)(ii), which provides for a magistrate to make findings of fact and conclusions of law, does not specify the level of detail required in those findings."  *MCEO*, 2011-Ohio-4478, at ¶ 18.  Accordingly, "[w]e have previously held that 'when a party objects to [a magistrate's] report, it is essential that the report include sufficient information to permit the trial court to resolve the legal issues raised by the objection.' "  *Id.*, quoting *Zacek v. Zacek*, 11 Ohio App.3d 91, 94 (10th Dist.1983).  *See also State ex rel. Bedard v. Lockbourne*, 69 Ohio App.3d 452, 459 (10th Dist.1990) ("To comply with Civ.R. 53, a [magistrate's] report must refer to facts contained in the record that support the conclusion and recommendation of the [magistrate].").

{¶ 33} In our view, the magistrate's findings of fact are sufficient on their face without the additional findings suggested by MCEO. Contrary to MCEO's assertions, the magistrate's findings are neither incomplete nor inaccurate. Moreover, the additional facts that MCEO wished the magistrate to find are relevant to this dispute only if this court were to adopt MCEO's erroneous interpretation of Article 3.12 of the expiring CBA. Accordingly, for the reasons cited infra, we decline to adopt MCEO's interpretation of the expiring CBA, and we overrule MCEO's objections to the magistrate's findings of fact.

**Motion to Conduct Discovery**

{¶ 34} Finally, we note that MCEO has also moved this court to set aside the magistrate's December 8, 2015 order denying MCEO's motion to conduct discovery. The magistrate denied the motion based on the Supreme Court's authority in *Portage Lakes*. In *Portage Lakes*, the court stated that "the review of a SERB decision is generally limited to the facts as they existed at the time SERB made its decision." *Id.* at ¶ 55. We agree with the magistrate's determination, and for the reasons set forth in the magistrate's order, we deny MCEO's motion to conduct discovery.

{¶ 35} Following an independent review of the magistrate's decision and the objections filed by MCEO, we find that the magistrate has determined the pertinent facts and properly applied the relevant law. Accordingly, for the reasons set forth in both the magistrate's decision and those expressed herein, we adopt the magistrate's decision, as modified by our supplemental discussion, as our own, including the findings of fact and conclusions of law contained therein. MCEO's objections are overruled, and the requested writ of mandamus is hereby denied.

*Motion to conduct discovery denied*;
*objections overruled, writ of mandamus denied.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____

**A P P E N D I X**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


State ex rel. Municipal Construction            :
Equipment Operators' Labor Council,
                                                :
          Relator,
                                                :
v.                                                          No. 15AP-471
                                                :
Ohio State Employment Relations Board,                   (REGULAR CALENDAR)
                                                :
          Respondent.
                                                :

---

**M A G I S T R A T E ' S   D E C I S I O N**

**Rendered on October 25, 2016**

---

*Climaco, Wilcox, Peca, Tarantino, & Garofoli Co., L.P.A., Stewart D. Roll,* and *David M. Cuppage,* for relator.

*Michael DeWine,* Attorney General, and *Lori J. Friedman,* for respondent.

---

IN MANDAMUS

{¶ 34} In this original action relator, Municipal Construction Equipment Operators' Labor Council ("MCEO"), requests a writ of mandamus ordering respondent, the Ohio State Employment Relations Board ("SERB"), to find probable cause to believe that an employer participating in labor negotiations with the union, North Ridgeville City School District Board of Education ("school board" or "employer") committed unfair labor practices ("ULP"), and to issue a ULP complaint and conduct a hearing on MCEO's previously-filed ULP charge before SERB.

<u>Findings of Fact</u>:

{¶ 35} 1. The school board and MCEO's predecessor, the Ohio Association of Public School Employees AFSCME/AFL-CIO Local 276 ("OAPSE"), were parties to a collective bargaining agreement ("CBA") in force from July 1, 2011 through June 30, 2013.

{¶ 36} 2. On July 1, 2013, the day following expiration of the CBA, MCEO filed its petition for representation election with SERB in order to represent the non-teaching, non-certified employees of North Ridgeville Schools.

{¶ 37} 3. MCEO was eventually deemed the exclusive representative for these employees.

{¶ 38} 4. MCEO and the school board began negotiating a successor CBA in January 2014. Negotiations were active and ongoing for the next several months with frequent meetings and exchanges of emails and proposals.

{¶ 39} 5. During the course of these negotiations, the terms of employment for the affected school district employees continued to be governed by the CBA that lapsed at the end of June 2013, pursuant to *In Re State Emp. Relations Bd. v. Crestline Exempted School Dist. Bd. of Edn.*, SERB No. 2006-003 (March 21, 2006).

{¶ 40} 6. Article 3.12 of the CBA provided specific terms under which the parties could declare an impasse in negotiations for a subsequent agreement:

> If the parties are unable to reach agreement within forty-five (45) calendar days of the expiration of this agreement, either party may declare the issues to be at impasse. Thereupon, the parties will seek to resolve the impasse through mediation. To this end, they shall request the assistance of the Federal Mediation and Conciliation Service. The FMCS shall appoint a federal mediator who will conduct mediation in accordance with its rules. The parties agree that this procedure set forth above shall be the exclusive dispute resolution procedure and shall supersede those established in R.C. 4117.10, 4117.14, and related sections.

{¶ 41} 7. After more than 45 days of negotiations, the school board's attorney notified MCEO by email on August 8, 2014 that the school board would declare an impasse under Article 3.12 of the CBA and request intervention of the Federal Mediation and Conciliation Service ("FMCS").

{¶ 42} 8. On August 12, 2014, MCEO filed a ULP charge with SERB claiming that the school board improperly declared an impasse in negotiations.

{¶ 43} 9. MCEO argued in furtherance of its ULP charge that the declaration of an "impasse" must be guided by the definition found in *Twinsburg City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 172 Ohio App.3d 535, 2007-Ohio-957 (9th Dist.), and comparable federal cases.

{¶ 44} 10. The school board moved before SERB on August 15, 2014 to dismiss the ULP charge, citing its right to declare an impasse under Article 3.12 of the CBA.

{¶ 45} 11. SERB's labor relations investigator gathered information from the parties and issued a memorandum on September 15, 2014 recommending that SERB grant the school board's motion to dismiss.

{¶ 46} 12. By order dated October 9, 2014, SERB determined that no probable cause existed to find a statutory ULP violation and dismissed MCEO's ULP charge with prejudice.

{¶ 47} 13. MCEO commenced the present action with a complaint seeking a writ of mandamus filed May 5, 2015.

Conclusions of Law:

{¶ 48} A relator seeking a writ of mandamus must establish: (1) a clear right to the relief prayed for; (2) a clear legal duty upon the respondent to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *Kinsey v. Bd. of Trustees of the Police & Fire Pension Fund of Ohio,* 49 Ohio St.3d 224, 225 (1990). Relator MCEO asserts that SERB abused its discretion in dismissing the ULP charge and that MCEO is entitled to a writ of mandamus to compel SERB to issue a complaint and conduct a hearing on the charge. For the reasons that follow, the magistrate finds no abuse of discretion by SERB, and denies MCEO's request for a writ of mandamus.

{¶ 49} Pursuant to R.C. 4117.12(B), when a party files a charge with SERB alleging that a ULP has been committed, "the board or its designated agent shall investigate the charge." If the board finds probable cause to believe that a ULP violation occurred, it shall issue a complaint and conduct a hearing. *Id.* There is no direct avenue

of appeal from this determination. *Ohio Assn. of Public School Emps., Chapter 643 v. Dayton City School Dist. Bd. of Edn.,* 59 Ohio St.3d 159 (1991). The proper means by which to challenge SERB's dismissal of the ULP charge for lack of probable cause is through the present mandamus action. *State ex rel. Serv. Emps. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.,* 81 Ohio St.3d 173 (1998), syllabus. In considering whether a writ should issue, we determined whether SERB abused its discretion in dismissing the ULP charge. *State ex rel. Leigh v. State Emp. Relations Bd.,* 76 Ohio St.3d 143, 145 (1996). In this context, the term "abuse of discretion" means that SERB's decision is unreasonable, arbitrary, or unconscionable. *Id.,* citing *State ex rel. Brenders v. Hall,* 71 Ohio St.3d 632, 637 (1995).

{¶ 50} The Supreme Court of Ohio has acknowledged the deference due to the specialized administrative expertise required of SERB: "It was clearly the intention of the General Assembly to vest SERB with broad authority to administer and enforce R.C. Chapter 4117. This authority must necessarily include the power to interpret the Act to achieve its purposes." (Citations omitted.) *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.,* 40 Ohio St.3d 257, 260 (1988). SERB's investigative procedures, however, are not at issue here because the matter turns upon a single question: whether the parties' right to declare an impasse in negotiations hinges upon the defined terms of the prior CBA, which continue to govern parties' relations pursuant to *Crestline,* or whether they were bound to apply the definition of an "ultimate impasse" set forth in *Twinsburg, supra,* which states that an impasse can occur only where there is "'no realistic possibility that a continuation of discussion at that time would have been fruitful.'" *Twinsburg* at ¶ 15, quoting *Am. Fedn. of Television & Radio Artists, AFL-CIO, Kansas City Local v. NLRB,* 395 Fed.2d 622, 628 (D.C. Cir.1968). In *Twinsburg,* the Ninth District noted that SERB has adopted the Federal National Relations Board's definition of an impasse stated in *Am. Fedn. of Television & Radio Artists. See also, Toledo Police Command Officers' Assn. v. State Emp. Relations Bd.,* 6th Dist. No. L-13-1074, 2014-Ohio-4341, ¶ 41, quoting *In re Vandalia-Butler City School Dist. Bd. of Edn.,* SERB No. 90-003 (Feb. 9, 1990): "Ultimate impasse is a legal concept adopted from the private sector. The test developed by the NLRB as to whether there is an ultimate impasse is reflected and approved in the case of [*Am. Fedn. of Television & Radio*

*Artists, AFL-CIO* at 629], and appears to be whether there is 'no realistic possibility that continuation of discussion at that time would have been fruitful.' Under NLRB case law the existence of an impasse is very much a question of fact, and many factors are considered in such factual determinations."

{¶ 51} The definition of ultimate impasse set forth above is not applicable here. The employer did not declare an impasse for purposes of imposing a unilateral modification and curtailing further negotiation. *See, generally, In re State Emp. Relations Bd. v. Toledo City School Dist. Bd. of Ed.,* SERB No. 2001-006 (Oct. 1, 2001). The declaration of an impasse here will lead only to mediation under the oversight of the FMCS, i.e., further negotiation under structured and potentially more productive conditions. Furthermore, R.C. 4117.14(C) permits the parties to implement a bargained-for alternative dispute resolution procedure. *See State Emp. Relations Bd. v. Springfield,* 31 Ohio App.3d 44 (1986). Relator does not assert that the dispute resolution procedures set forth in the lapsed CBA are void or not binding. This is the only legal determination required to uphold SERB's finding of no probable cause and dismissal of the ULP charge in this matter. MCEO's assertions that the school board did not bargain in good faith is based exclusively upon implementation of the mediation provision in Section 3.12 of the CBA. Likewise, any allegations that SERB failed to adequately investigate the ULP charge warrants no further discussion because the only factors at issue are conceded by MCEO, that is, the existence of the contractual provision for mediation after 45 days, and the continued operation of the expired CBA pursuant to *Crestline.*

{¶ 52} For the foregoing reasons, it is the magistrate's decision that relator MCEO has failed to establish that SERB abused its discretion in dismissing the ULP charge or that SERB failed to properly investigate the charge. It is the magistrate's decision that this court deny relator's request for a writ of mandamus.

                                                    /S/ MAGISTRATE
                                                    MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).